COURT OF APPEALS
EIGHTH DISTRICT OF TEXAS
EL PASO, TEXAS

| | | |
|---|---|---|
| FIRST STATE BANK OF MESQUITE, | § | |
| | | No. 08-09-00032-CV |
| Appellant, | § | |
| | | Appeal from the |
| v. | § | |
| | | 193rd District Court |
| BELLINGER & DEWOLF, LLP, H. | § | |
| LYNN MUSGROVE, JR. AND GLEN | | of Dallas County, Texas |
| BELLINGER, | § | |
| | | (TC# 08-13950-L) |
| Appellees. | § | |

**O P I N I O N**

First State Bank of Mesquite appeals from a summary judgment granted in favor of Bellinger & Dewolf, LLP, H. Lynn Musgrove, Jr., and Glen Bellinger.[1]

In 2004, First State Bank of Mesquite (the "Bank") loaned approximately $1.7 million to Fradette Brothers Enterprises, Inc. ("FBE") for the purchase of H2O Fire Sprinkler Corporation ("H2O") from Robert Hawley. FBE executed a promissory note and pledged the assets of H2O Fire Sprinkler Corporation as collateral for the loan. John Fradette and Mike Fradette executed personal guaranties in connection with the loan. According to the pleadings, John Fradette had worked for H2O since 2001 and he had been president of the company since September of 2003.

FBE subsequently filed suit against Hawley alleging he had misrepresented the financial condition of H2O (cause number 04-10234-L filed in the 193rd District Court of Dallas County).

---

[1] This case was transferred from the Fifth Court of Appeals to this Court pursuant to a docket equalization order entered by the Texas Supreme Court. *See* TEX.GOV'T CODE ANN. § 73.001 (West 2005).

FBE amended its petition to join the Bank as a defendant based on allegations that the Bank had fraudulently induced it to purchase H2O and enter into the loan transactions. The Bank filed suit in the 192nd District Court against FBE and the Fradettes seeking to recover on the note and guaranties (cause number 05-4539-K). The 193rd District Court granted FBE's motion to consolidate the two cases and cause number 05-4539-K was transferred to the 193rd District Court.

The Bank amended its petition to include third party claims against the Fradettes' attorneys, Bellinger & DeWolf, LLP, H. Len Musgrove and Glen Bellinger (collectively referred to as "Bellinger & DeWolf"). The second amended petition alleged that FBE and the Fradettes, with the assistance of Bellinger & DeWolf, devised a scheme to transfer the pledged assets into a new company in violation of the security agreements and with the intent to harm the bank. This pleading further alleged that Bellinger & DeWolf engaged in this scheme or conspired to engage in the scheme to facilitate Mike and John Fradette's ability to approach other financial institutions, including Sterling Bank, Sovereign Bank, Fidelity Bank, Jefferson Bank, and Frost Bank, and obtain new loans by pledging the same assets. These allegations form the basis of the fraud (Count 4), conspiracy to breach fiduciary duty (Count 6), and conspiracy to commit fraud causes of action (Count 7).

On December 17, 2007, the trial court heard Bellinger and DeWolf's special exceptions to the second amended petition. According to the docket sheet, the trial court granted the special exceptions in part and ordered the Bank to re-plead Counts 4, 5, and 6 to provide a complete factual basis of these claims as to Bellinger & DeWolf. The trial court did not immediately enter a written order reflecting its ruling. On December 20, 2007, the trial court entered a standing

scheduling order which set the case for jury trial on July 22, 2008 and established the deadline for filing amended pleadings asserting new claims or defenses. Under the order, the deadline was 120 days before the trial setting, or March 24, 2008. On that date, the trial court signed an order reflecting its ruling on the special exceptions and ordering the Bank to re-plead within seven days from the date of the order. Inexplicably, the order also required the Bank to re-plead no later than March 24, 2008, the date the order was signed.

On April 8, 2008, the Bank filed its third amended petition and counterclaim which asserted new claims against Bellinger and DeWolf for RICO violations and RICO conspiracy (Counts 8 and 9). These claims were based on allegations that FBE and the Fradettes, with the assistance of Bellinger & DeWolf, executed false loan documents and pledged the same collateral over and over for the purpose of defrauding the banks in a "modern day bank heist." The pleadings also alleged that FBE, the Fradettes, and Bellinger & DeWolf engaged in mail fraud in violation of 18 U.S.C. §1341 and wire fraud in violation of 18 U.S.C. §1343. On April 10, 2008, the Bank filed a motion requesting leave to file additional claims or alternatively requesting that the court modify the scheduling order. That same day, Bellinger & DeWolf filed a motion to strike the third amended petition and counterclaim because it did not comply with the trial court's order on special exceptions and it was untimely filed. Bellinger & DeWolf attached to its motion three letters addressed to counsel for the Bank asking whether the Bank intended to file an amended petition in compliance with the trial court's order on the special exceptions. The letters also reflect that counsel for Bellinger & DeWolf had been led to believe that the Bank intended to file an amended petition in March 2008 prior to the deadline. On May 7, 2008, the trial court struck the Bank's RICO claims because they had not been filed by the deadline

-3-

established by the scheduling order.

After Bellinger & DeWolf filed a motion for no evidence and traditional summary judgment, the Bank sought leave to file a fourth amended petition and counterclaim. Alternatively, the Bank requested that the court reconsider the ruling on the Bank's motion for leave to file its third amended petition. The trial court denied the Bank's motion. The Bank filed its response to the summary judgment motion. Bellinger & DeWolf filed written objections to the Bank's summary judgment evidence which included the affidavit of Mariano Hernandez. The trial court sustained Bellinger & DeWolf's objections and struck portions of the affidavit of Mariano Hernandez. The trial court granted the motion for summary judgment as to all of the Bank's claims against Bellinger & DeWolf. The Bank timely filed notice of appeal.

## THE RICO CLAIMS

The Bank's first two issues pertain to the trial court's order striking the RICO claims asserted against Bellinger & DeWolf in the third amended petition and refusing to allow amendment of the Bank's pleadings to assert these claims. The Bank asserts that the trial court's decision amounts to an abuse of discretion.

A trial court is given wide discretion in managing its docket, and we will not interfere with the exercise of that discretion absent a showing of clear abuse. *Clanton v. Clark*, 639 S.W.2d 929, 931 (Tex. 1982); *Roskey v. Continental Casualty Company*, 190 S.W.3d 875, 879 (Tex.App.--Dallas 2006, pet. denied). Entry of a scheduling order is one type of docket management. Accordingly, we review a trial court's enforcement of a scheduling order for an abuse of discretion. *In re Estate of Henry*, 250 S.W.3d 518, 526 (Tex.App.--Dallas 2008, no pet.). A trial court abuses its discretion when its ruling is arbitrary, unreasonable, or without

-4-

reference to any guiding rules or legal principles. *K-Mart Corp. v. Honeycutt*, 24 S.W.3d 357, 360 (Tex. 2000).

Under Texas Rule of Civil Procedure 63, a party is permitted to file amended pleadings without leave of court up to seven days before trial. TEX.R.CIV.P. 63. However, the seven-day deadline does not apply when the trial court has entered a scheduling order pursuant to Texas Rule of Civil Procedure 166 setting a different deadline. TEX.R.CIV.P. 63; *Roskey*, 190 S.W.3d at 879; *see G.R.A.V.I.T.Y. Enterprises, Inc. v. Reece Supply Company*, 177 S.W.3d 537, 542-43 (Tex.App.--Dallas 2005, no pet.). Even after the time for filing amended pleadings has passed, the trial court abuses its discretion in denying leave to file an amended pleading unless (1) the party opposing the amendment presents evidence of surprise or prejudice, or (2) the amendment asserts a new cause of action or defense, and thus is prejudicial on its face, and the opposing party objects to the amendment. *G.R.A.V.I.T.Y.*, 177 S.W.3d at 542, *citing State Bar of Texas v. Kilpatrick*, 874 S.W.2d 656, 658 (Tex. 1994); *Greenhalgh v. Service Lloyds Insurance Company*, 787 S.W.2d 938, 939 (Tex. 1990). In these two situations, the decision to allow or deny the amendment rests with the sound discretion of the trial court, and the trial court's decision will not be overturned unless it constitutes a clear abuse of discretion. *G.R.A.V.I.T.Y.*, 177 S.W.3d at 542, *citing Kilpatrick*, 874 S.W.2d at 658.

The trial court's standing scheduling order set March 24, 2008 as the deadline for filing amended pleadings asserting new claims or defenses. The Bank does not argue that its third amended pleading did not raise new claims nor does it contend that its third amended petition was timely filed. It instead asserts that the trial court abused its discretion by refusing to permit the amendment because Bellinger & DeWolf failed to introduce any evidence in the trial court

establishing surprise or prejudice.  The Bank is correct that the party opposing the amendment generally has the burden to show prejudice or surprise.  *Greenhalgh*, 787 S.W.2d at 939; *Hakemy Brothers, Ltd. v. State Bank and Trust Co., Dallas*, 189 S.W.3d 920, 924 (Tex.App.--Dallas 2006, pet. denied).  But the trial court may conclude the amendment is on its face calculated to surprise or that the amendment would reshape the cause of action, prejudicing the opposing party and unnecessarily delaying the trial.  *Greenhalgh*, 787 S.W.2d at 940; *Hakemy Brothers*, 189 S.W.3d at 924; *Smith Detective Agency & Nightwatch Serv., Inc. v. Stanley Smith Sec., Inc.*, 938 S.W.2d 743, 749 (Tex.App.--Dallas 1996, writ denied).  In such a case, the opposing party's objection is sufficient to show surprise.  *Greenhalgh*, 787 S.W.2d at 940 n.3; *Hakemy Brothers*, 189 S.W.3d at 924.

Even though the parties had been litigating the case for several years, the Bank waited until after the scheduling order's deadline to amend its pleadings to include claims against Bellinger & DeWolf for RICO violations and RICO conspiracy.  The pleadings alleged for the first time that Bellinger & DeWolf had engaged in mail fraud and wire fraud with the purpose of defrauding the Bank as well as seven other financial institutions, Bank of America, Jefferson Bank, Sterling Bank, Parkway Bank, Sovereign Bank, Frost Bank, and Compass Bank.  The pleadings further alleged that Bellinger & DeWolf had conspired with Mike Fradette and John Fradette to engage in this "pattern of racketeering activity" within the meaning of the RICO statute.  In light of the fact that the trial court had previously granted Bellinger & Dewolf's special exceptions and ordered the Bank to re-plead its fraud and conspiracy to commit fraud claims, the trial court could have found that the late amendment which included the new RICO claims was calculated to surprise Bellinger and DeWolf.  Under these circumstances, we do not

find an abuse of discretion.  Issues One and Two are overruled.

## SUMMARY JUDGMENT EVIDENCE

In Issue Three, the Bank challenges the trial court's ruling which struck portions of the affidavit of Mariano Hernandez, the executive vice president of the Bank.

We review a trial court's ruling concerning the admission or exclusion of summary judgment evidence for an abuse of discretion.  *Barraza v. Eureka Company*, 25 S.W.3d 225, 228 (Tex.App.--El Paso 2000, pet. denied).  A trial court abuses its discretion if it acts in an arbitrary or unreasonable manner without reference to any guiding rules or principles.  *Bowie Memorial Hospital v. Wright*, 79 S.W.3d 48, 52 (Tex. 2002).  When reviewing matters committed to the trial court's discretion, a court of appeals may not substitute its own judgment for that of the trial court.  *Bowie*, 79 S.W.3d at 52.

Bellinger & DeWolf moved to strike Hernandez's affidavit on the ground that it contradicted his deposition testimony in certain respects without explanation for the change in his testimony and it was submitted in bad faith to create a fact issue and avoid summary judgment.  The trial court sustained the objections with respect to the portions of the affidavit regarding:  (1) when the Bank decided, agreed to make, or approved the loans in question; and (2) Hernandez's review of the Deloitte & Touche report, the contents of the report, and his findings upon review of the report.

The Bank's petition alleged that, John and Mike Fradette, as part of their due diligence in determining how much to pay for the company, requested that Deloitte & Touche prepare a valuation report of H2O Fire Sprinkler Corporation.  Mike Fradette was a senior partner with Deloitte & Touche in Boston.  According to the petition, the Fradettes provided financial

information to Deloitte & Touche in connection with the valuation report. John Fradette forwarded this report to the Bank prior to the execution and funding of the loan. The report covered the fair market value of a controlling interest of H2O Fire Sprinkler Corporation as of October 1, 2003. The petition also included allegations that Mike and John Fradette, along with Lynn Musgrove who was counsel for FBE and the Fradettes, met with Mariano Hernandez on February 11, 2004 at the Bank's offices for a closing meeting.[2] When Hernandez asked the Fradettes and Musgrove if they had performed all of their due diligence for acquisition of H2O, Musgrove stated that they had and there were no contingent liabilities other than what was set forth in the stock purchase agreement. The pleadings go on to allege that the Bank made the loan based on Musgrove's representations.

Hernandez testified in his deposition that at the closing meeting on February 11, 2004, a decision had already been made to lend the money to FBE. This testimony is significant because it would show that the Bank did not rely on Musgrove's statements when it made the loan to FBE. In his affidavit, however, Hernandez stated that since the valuation report was made as of October 1, 2003, he asked Musgrove and the Fradettes at the closing whether they had discovered any contingent liabilities since that date. Hernandez also averred that the decision to lend the money to FBE was made after the closing meeting on February 11, 2004 and the loan would not have been made but for Musgrove's statements that there were no unknown contingent liabilities.

Hernandez also testified in his deposition that he had not reviewed the valuation of H2O prepared by Deloitte & Touche. In his affidavit, however, Hernandez contradicted his testimony by stating he reviewed the Deloitte & Touche report prior to the closing meeting on February 11,

---

[2] Musgrove is a partner in Bellinger & DeWolf.

2004.  These statements are also material to the Bank claims that it relied on Bellinger &

DeWolf's representations.

Citing *Randall v. Dallas Power & Light Company*, 752 S.W.2d 4, 5 (Tex. 1988) and

*Gaines v. Hamman*, 163 Tex. 618, 358 S.W.2d 557, 562 (1962), the Bank relies on the rule that a

deposition does not have controlling effect over an affidavit in determining whether a motion for

summary judgment should be granted.  Thus, when conflicting inferences may be drawn from a

deposition and an affidavit made by the same person and filed in a summary judgment

proceeding, a fact issue is presented that will preclude summary judgment.  *Randall*, 752 S.W.2d

at 5; *Pando v. Southwest Convenience Stores, L.L.C.*, 242 S.W.3d 76, 79 (Tex.App.--Eastland

2007, no pet.).  A different situation is presented, however, when the summary judgment

affidavit is executed after the deposition and there is a clear contradiction on a material point

without explanation for the change.  Several intermediate appellate courts have held that such an

affidavit merely creates a sham fact issue and the contradictory statements in the affidavit may be

disregarded.  *See e.g., Plunkett v. Connecticut General Life Insurance*, 285 S.W.3d 106, 119

(Tex.App.--Dallas 2009, pet. denied); *Pando*, 242 S.W.3d at 79; *Trostle v. Trostle*, 77 S.W.3d

908, 915 (Tex.App.--Amarillo 2002, no pet.); *Cantu v. Peacher*, 53 S.W.3d 5, 10-11 (Tex.App.--

San Antonio 2001, pet. denied); *Eslon Thermoplastics v. Dynamic Systems, Inc.*, 49 S.W.3d 891,

901 (Tex.App.--Austin 2001, no pet.); *Burkett v. Welborn*, 42 S.W.3d 282, 286 (Tex.App.--

Texarkana 2001, no pet.); *Farroux v. Denny's Restaurants, Inc.*, 962 S.W.2d 108, 111

(Tex.App.--Houston [1st Dist.] 1997, no pet.).  The First Court of Appeals explained in *Farroux*

that:

A party cannot file an affidavit to contradict his own deposition testimony

-9-

without any explanation for the change in the testimony, for the purpose of creating a fact issue to avoid summary judgment. If a party's own affidavit contradicts his earlier testimony, the affidavit must explain the reason for the change. Without an explanation of the change in the testimony, we assume the sole purpose of the affidavit was to avoid summary judgment. As such, it presents merely a 'sham' fact issue.

*Farroux*, 962 S.W.2d at 111 (footnote omitted).

We acknowledge that some appellate courts have either limited the sham affidavit doctrine or have declined altogether to adopt it. *See Pierce v. Washington Mutual Bank*, 226 S.W.3d 711, 717-18 (Tex.App.--Tyler 2007, pet. denied); *Del Mar College District v. Vela*, 218 S.W.3d 856, 862 (Tex.App.--Corpus Christi 2007, no pet.); *Davis v. City of Grapevine*, 188 S.W.3d 748, 756 (Tex.App.--Fort Worth 2006, pet. denied); *Thompson v. City of Corsicana Housing Authority*, 57 S.W.3d 547, 557 (Tex.App.--Waco 2001, no pet.). This Court applied the sham affidavit doctrine in *Morgan v. Straub*, No. 08-00-00191-CV, 2001 WL 925760 (Tex.App.--El Paso August 16, 2001, no pet.). Even if we disagreed with the doctrine, the Fifth Court of Appeals has adopted it and we would be obligated to follow its precedent because this is a transfer case. *See* TEX.R.APP.P. 41.3.

The trial court could have reasonably concluded that the referenced portions of the affidavit directly contradicted Hernandez's testimony without any explanation for the change in testimony in order to create a fact issue to avoid summary judgment. Accordingly, the trial court did not abuse its discretion by sustaining the objections and striking these portions of the Hernandez affidavit. Issue Three is overruled.

**SUMMARY JUDGMENT**

In Issue Four, the Bank contends that the trial court erred by granting summary judgment

in favor of Bellinger & DeWolf.  The summary judgment motion asserted both traditional and no evidence grounds and the trial court did not specify the precise basis for its ruling.  Consequently, the Bank is required to negate all grounds on appeal.  *State Farm Fire & Casualty Company v. S.S.*, 858 S.W.2d 374, 381 (Tex. 1993).

*Standards of Review*

The standard of review for traditional summary judgment under TEX.R.CIV.P. 166a(c) is well established.  *Nixon v. Mr. Property Management Company, Inc.*, 690 S.W.2d 546, 548 (Tex. 1985).  The moving party carries the burden of showing there is no genuine issue of material fact and it is entitled to judgment as a matter of law.  *Diversicare General Partner, Inc. v. Rubio*, 185 S.W.3d 842, 846 (Tex. 2005); *Browning v. Prostok*, 165 S.W.3d 336, 344 (Tex. 2005).  Evidence favorable to the non-movant will be taken as true in deciding whether there is a disputed issue of material fact.  *Fort Worth Osteopathic Hospital, Inc. v. Reese*, 148 S.W.3d 94, 99 (Tex. 2004).  All reasonable inferences, including any doubts, must be resolved in favor of the non-movant.  *Id*.  A defendant is entitled to summary judgment if the evidence disproves as a matter of law at least one element of each of the plaintiff's causes of action or if it conclusively establishes all elements of an affirmative defense.  *D. Houston, Inc. v. Love*, 92 S.W.3d 450, 454 (Tex. 2002); *Randall's Food Markets, Inc. v. Johnson*, 891 S.W.2d 640, 644 (Tex. 1995).  Once the defendant establishes a right to summary judgment as a matter of law, the burden shifts to the plaintiff to present evidence raising a genuine issue of material fact.  *City of Houston v. Clear Creek Basin Authority*, 589 S.W.2d 671, 678-79 (Tex. 1979); *Scown v. Neie*, 225 S.W.3d 303, 307 (Tex.App.--El Paso 2006, pet. denied).

A no evidence summary judgment is essentially a pretrial directed verdict, and we apply

the same legal sufficiency standard of review. *Viasana v. Ward County*, 296 S.W.3d 652, 654 (Tex.App.--El Paso 2009, no pet.); *Martinez v. Leeds*, 218 S.W.3d 845, 848 (Tex.App.--El Paso 2007, no pet.). The party moving for no evidence summary judgment must assert that there is no evidence of one or more essential elements of a claim or defense on which the non-movant would have the burden of proof at trial. *Viasana*, 296 S.W.3d at 654; *Martinez*, 218 S.W.3d at 848; *see* TEX.R.CIV.P. 166a(i). The burden then shifts to the non-movant to produce evidence raising a fact issue on the challenged elements. *Viasana*, 296 S.W.3d at 654; *Martinez*, 218 S.W.3d at 848. To raise a genuine issue of material fact, the non-movant must set forth more than a scintilla of probative evidence as to an essential element of his claim or defense. *Viasana*, 296 S.W.3d at 654; *Martinez*, 218 S.W.3d at 848.

## *Fraud/Fraud in the Inducement*

In Count 4 of its third amended petition, the Bank asserted that it was defrauded or fraudulently induced into making the Fradette loans by statements made by Musgrove. The Bank concedes in its brief that if Issue Three is overruled that there are no fact issues precluding the summary judgment with respect to these claims.

## *Conspiracy to Breach Fiduciary Duty*

In Count 6 of its third amended petition, the Bank alleged that an "informal trust agreement" existed between the Bank and FBE and FBE owed the Bank a fiduciary duty based on the following language in the security agreement:

> If this agreement includes accounts, I will not settle any account for less than its full value without your written permission. I will collect all accounts until you tell me otherwise. I will keep the proceeds from all of the accounts and any goods which are returned to me or which I take back in trust for you. I will not mix them with any other property of mine. I will deliver them to you at your request.

The petition alleges that Bellinger & DeWolf conspired with FBE and the Fradettes to breach this fiduciary duty. Bellinger & DeWolf moved for summary judgment under Rule 166a(i) on the grounds that: (1) there is no evidence that the FBE owed a fiduciary duty to the Bank; (2) there is no evidence that any accounts or goods were returned or taken back by FBE under the provision in the security agreement relied on by the Bank; and (3) there is no evidence that the collateral in which the Bank claims a security interest had any value at the time of the alleged wrongful conduct. The elements of breach of fiduciary duty are (1) the existence of a fiduciary relationship, and (2) a breach of duty by the fiduciary (3) that causes damages to the client or improper benefit to the fiduciary. *Burrow v. Arce*, 997 S.W.2d 229, 237 (Tex. 1999). The summary judgment motion challenges each of these three elements.

The Bank's summary judgment response plainly addresses whether a fiduciary duty existed but it fails to address the other two elements. Accordingly, the trial court did not err by granting summary judgment with respect to this cause of action.

*Conspiracy to Commit Fraud*

In Count 7 of the third amended petition, the Bank alleged that Bellinger & DeWolf knew in June of 2004 when FBE and the Fradettes executed the renewal note and second guaranty that their clients did not intend to perform their obligation, but Bellinger & DeWolf nevertheless assisted their clients in executing the documents and advised their clients to execute same. The petition asserts that Bellinger & DeWolf's actions constituted conspiracy to commit fraud.

A plaintiff seeking to prevail on a fraud claim must prove that: (1) the defendant made a material misrepresentation; (2) the defendant knew the representation was false or made the representation recklessly without any knowledge of its truth; (3) the defendant made the

representation with the intent that the other party would act on that representation or intended to induce the party's reliance on the representation; and (4) the plaintiff suffered an injury by actively and justifiably relying on that representation. *DeSantis v. Wackenhut Corp.*, 793 S.W.2d 670, 688 (Tex. 1990). The elements of a civil conspiracy are: (1) two or more persons; (2) an object to be accomplished; (3) a meeting of the minds on the object or course of action; (4) one or more unlawful, overt acts; and (5) damages as a proximate result. *Schlumberger Well Surveying Corp. v. Nortex Oil & Gas Corp.*, 435 S.W.2d 854, 857 (Tex. 1968); *Greenberg Traurig of N.Y., P.C. v. Moody*, 161 S.W.3d 56, 80 (Tex.App.--Houston [14th Dist.] 2004, no pet.). In addition, civil conspiracy requires specific intent to agree to accomplish an unlawful purpose or to accomplish a lawful purpose by unlawful means. *Juhl v. Airington*, 936 S.W.2d 640, 644 (Tex. 1996); *A.H. Belo Corp. v. Corcoran*, 52 S.W.3d 375, 384 (Tex.App.--Houston [1st Dist.] 2001, pet. denied).

Bellinger & DeWolf moved for no evidence summary judgment on the grounds that: (1) there is no evidence that FBE and the Fradettes entered into the note renewals with no intention of performing; (2) there is no evidence of any agreement between the alleged co-conspirators to cause the injury alleged; (3) there is no evidence that Bellinger & DeWolf advised or assisted FBE and the Fradettes to enter into the note renewals with knowledge of an intent to not perform; (4) there is no evidence that Bellinger & DeWolf profited from the renewal transactions; and (5) there is no evidence that the Bank suffered any damages as a result of the alleged fraud.

Although Bellinger & DeWolf challenged multiple elements of the cause of action, the Bank's summary judgment response addressed only the evidence pertaining to a false representation made by Musgrove at the February 11, 2004 closing concerning due diligence, the

Bank's reliance on that representation, and the Bank's exercise of ordinary care. The response does not address the evidence showing a specific intent to agree to accomplish an unlawful purpose or to accomplish a lawful purpose by unlawful means nor does it address the damages element. Consequently, the trial court did not err by granting the no evidence summary judgment motion with respect to this cause of action. Issue Four is overruled.

Having overruled each issue on appeal, we affirm the judgment of the trial court.

March 30, 2011

DAVID WELLINGTON CHEW, Chief Justice

Before Chew, C.J., McClure, and Rivera, JJ.