COURT OF APPEALS
EIGHTH DISTRICT OF TEXAS
EL PASO, TEXAS



§

ELIA PETTIT, FORMERLY KNOWN
AS ELIA RICH,

§

No. 08-14-00241-CV

§

Appeal from

Appellant,

§

327th District Court

v.

§

of El Paso County, Texas

BARBARA MAXWELL, FORMERLY
KNOWN AS BARBARA PETTIT,

§

(TC # 2011-DCV05317)

§

Appellee.

§

## **O P I N I O N**

This appeal arises from a summary judgment in a malicious prosecution case. The issue before us is whether the defendant below, Barbara Maxwell, disproved as a matter of law the "probable cause" element of Elia Pettit's malicious prosecution claim. We conclude that she did not and reverse the summary judgment which was granted below.

### PROCEDURAL AND FACTUAL SUMMARY

The genesis of this lawsuit is the 2008 indictment of Elia Pettit for theft of property over $200,000.00. At the time of the indictment, Elia Pettit was married to Eugene Pettit. Eugene had divorced Barbara Maxwell in 2006. The divorce decree awarded Barbara a house in El Paso,

as well as any household furniture, furnishings, art objects, and collectibles in her possession or control. Similarly, Eugene was awarded any of the same items which were in his possession or control. Barbara was deployed to Iraq as a part of her duties with the United States Army from July 2006 to December 2007. Eugene at that time was still living, with Barbara's permission, in the house that Barbara was awarded under the divorce decree.

When Maxwell returned from her tour of duty, she noticed her personal effects from the house were missing. Maxwell claims that a neighbor, Elisa Ramirez, told her that Elia Pettit and Eugene Pettit sold "my belongings . . . at a garage sale in May 2007." Ramirez executed an affidavit recounting that Eugene Pettit and "a woman whose name I do not know" were present at a yard sale in May 2007. In December 2007 or January 2008, Maxwell reported the matter to the police. In July 2008, an assistant district attorney presented the case to a grand jury which indicted both Eugene and Elia Pettit for theft of property over $200,000.00, which is a first degree felony. Elia's indictment charges her with unlawfully appropriating furniture, household appliances, housewares, dishes, baseball cards, jewelry vases, and several specific types of figurines, all of which were collectively worth $200,000.00 or more. The district attorney's office dismissed the charge in 2010 because a witness, not identified in our record, had died. Thereafter Elia filed this suit against Maxwell asserting a claim for malicious prosecution.

Maxwell moved for summary judgment under TEX.R.CIV.P. 166a(c). The motion, supported by an affidavit from Maxwell, Ramirez, and Assistant District Attorney Cheri Shapleigh, contended that: (1) Maxwell did not initiate or procure the prosecution; (2) Maxwell had probable cause to alert the police; and (3) Maxwell did not act with malice. In the Rule 166a(c) motion, Maxwell properly acknowledged that she assumed the burden to show that there was no genuine issue of material fact for the elements that she challenged.

2

Pettit filed a response which included her own affidavit and that of Eugene. Both swore that Maxwell told the police not only that Elia had assisted in stealing property which belonged to her, but also that the property had a cumulative value of $200,000.00 or more. They averred that both claims were false. Eugene stated that Barbara Maxwell was awarded personal and real property worth at least $400,000.00 in the divorce. He further claimed, however, that prior to being deployed to Iraq, Barbara Maxwell came by the house and took a load of "clothing, jewelry, savings bonds, and numerous other items of personal property" to her new residence in Killeen, Texas. He swore that Maxwell "loaded up most of the valuable personal items which were in the residence and took them with her." Eugene agreed that he did have a yard sale, but all the items sold were his own and did not have a collective market value of more than $500.00. Elia swore that she did not assist in selling any personal property which had a cumulative value of more than $500.00 during the relevant time period.

In her response to the summary judgment, Elia also raised hearsay objections to some of the evidence submitted with Maxwell's motion. The trial court overruled the evidentiary objections and granted the motion for summary judgment, stating specifically in its order that the court "finds that there was probable cause as a matter of law for the issuance of the capias ordering the arrest of Plaintiff for the offense of theft over $200,000.00 . . . ."

## STANDARD OF REVIEW

We review a trial court's decision to grant summary judgment *de novo*. *Travelers Ins. Co. v. Joachim*, 315 S.W.3d 860, 862 (Tex. 2010). Where, as here, the trial court's order specifies the grounds on which it granted summary judgment, the summary judgment can be affirmed only on the grounds specified in the trial court's order. *Cincinnati Life Ins. Co. v. Cates,* 927 S.W.2d 623, 625-26 (Tex. 1996). In the interest of judicial economy, we may

3

consider other grounds that were raised and preserved by the movant but not ruled on by the trial court to decide if they support summary judgment. *Id.; Hernandez v. Porter*, 406 S.W.3d 789, 792 (Tex.App.--El Paso 2013, pet. denied); *Hernandez v. Mendoza*, 406 S.W.3d 351, 354 (Tex.App.--El Paso 2013, no pet.).

Maxwell asserted a traditional summary judgment under TEX.R.CIV.P. 166a(c). Under a traditional motion, the moving party carries the burden of showing that there is no genuine issue of material fact and it is entitled to judgment as a matter of law. *Diversicare General Partner, Inc. v. Rubio*, 185 S.W.3d 842, 846 (Tex. 2005); *Nixon v. Mr. Property Mgmt. Co., Inc.*, 690 S.W.2d 546, 548 (Tex. 1985). Stated otherwise, the defendant must conclusively negate one of the elements of the plaintiff's claim. *Phan Son Van v. Pena*, 990 S.W.2d 751, 753 (Tex. 1999). Evidence favorable to the non-movant will be taken as true in deciding whether there is a disputed issue of material fact. *Fort Worth Osteopathic Hospital, Inc. v. Reese*, 148 S.W.3d 94, 99 (Tex. 2004); *Tranter v. Duemling*, 129 S.W.3d 257, 260 (Tex.App.--El Paso 2004, no pet.). All reasonable inferences, including any doubts, must be resolved in favor of the non-movant. *Fort Worth Osteopathic Hospital*, 148 S.W.3d at 99. Once the movant establishes its right to summary judgment, the burden then shifts to the non-movant to present evidence which raises a genuine issue of material fact, thereby precluding summary judgment. *See City of Houston v. Clear Creek Basin Authority*, 589 S.W.2d 671, 678 (Tex. 1979).

A genuine issue of material fact is raised when the non-movant produces more than a scintilla of evidence regarding the challenged element. *Neely v. Wilson*, 418 S.W.3d 52, 59 (Tex. 2013). More than a scintilla of evidence exists when reasonable and fair-minded individuals could differ in their conclusions. *King Ranch, Inc. v. Chapman*, 118 S.W.3d 742, 751 (Tex. 2003). There is less than a scintilla of evidence when the evidence is so weak as to do no more

4

than create a mere surmise or suspicion of material fact. *Wade Oil & Gas, Inc. v. Telesis Operating Co., Inc.*, 417 S.W.3d 531, 540 (Tex.App.--El Paso 2014, no pet.).

## MALICIOUS PROSECUTION

A malicious prosecution plaintiff must prove: (1) commencement of a criminal prosecution against the plaintiff; (2) the defendant initiated or procured that prosecution; (3) termination of the prosecution in the plaintiff's favor; (4) the plaintiff's innocence; (5) lack of probable cause to initiate or procure the prosecution; (6) malice in filing the charge; and (7) damage to the plaintiff. *Kroger Texas Ltd. Partnership v. Suberu*, 216 S.W.3d 788, 793 n.3 (Tex. 2006); *Richey v. Brookshire Grocery Co.*, 952 S.W.2d 515, 517 (Tex. 1997).

We strictly apply these elements as they reflect a delicate balance of societal values. *Browning-Ferris Industries, Inc. v. Lieck*, 881 S.W.2d 288, 291 (Tex. 1994)("Even a small departure from the exact prerequisites for liability may threaten the delicate balance between protecting against wrongful prosecution and encouraging reporting of criminal conduct."). Citizens must be encouraged and free to report possible crimes to the authorities. *Id. citing, Sebastian v. Cheney*, 86 Tex. 497, 25 S.W. 691, 694 (1894) and RESTATEMENT (SECOND) OF TORTS ch. 29, intro. note, at 405 (1977). At the same time, the consequences of arrest and prosecution for an offense are considerable, and every citizen should be protected from a prosecution based on false claims arising from some malicious intent. *Id*.

The trial court's order granting the summary judgment specified the element upon which the motion was granted--probable cause--and accordingly we begin there. Our focus under the probable cause element is "whether a reasonable person would believe that a crime had been committed given the facts as the complainant honestly and reasonably believed them to be before the criminal proceedings were instituted." *Richey,* 952 S.W.2d at 517, *citing Akin v. Dahl,* 661

5

S.W.2d 917, 920 (Tex. 1983). A malicious prosecution plaintiff carries the burden of *disproving* probable cause. This shifting of the burden reflects the presumption that "the defendant acted reasonably and had probable cause to initiate criminal proceedings." *Suberu*, 216 S.W.3d at 792-93 ("The civil law presumes Kroger's good faith and requires Suberu to rebut this presumption, because it is more important that a private citizen report an apparent subversion of our laws than for the wrongly accused to attain monetary redress from the accuser."). To rebut the presumption, the plaintiff must produce evidence that the motives, grounds, beliefs, or other information upon which the defendant acted did not constitute probable cause. *Richey,* 952 S.W.2d at 518. If the plaintiff rebuts that presumption, the defendant is then required to carry the burden of proving the existence of probable cause. *Akin,* 661 S.W.2d at 920.

We also note that probable cause is measured as of the time the case is reported to the authorities by the defendant, and not sometime later as when the case has been investigated, tried, or as in this case, dismissed. *Akin*, 661 S.W.2d at 920; *French v. French*, 385 S.W.3d 61, 67 (Tex.App.--Waco 2012, pet. denied); *Digby v. Texas Bank*, 943 S.W.2d 914, 920-21 (Tex.App.--El Paso 1997, writ denied); *Turner v. Roadway Express, Inc.*, 911 S.W.2d 224, 226-27 (Tex.App.--Fort Worth 1995, writ denied). "Texas courts have consistently held that probable cause should be evaluated *from the perspective of the person or entity who made the report* to law enforcement authorities, *at the time* that the report was made." [Emphasis in original]. *Digby*, 943 S.W.2d at 920.

### OBJECTIONS TO EVIDENCE

Pettit's first issue complains of two evidentiary rulings. Pettit objected to a portion of Maxwell's affidavit in which she recited that "I was told by my neighbor Ms. Elisa Ramirez that my belongings had been sold at a garage sale." Pettit also objected to a section of Assistant District Attorney Shaphleigh's affidavit describing a document from the *El Paso Times* showing

6

that an advertisement for the yard sale was paid for by Elia.[1]  As to both statements, Pettit raised hearsay objections, and both objections were expressly overruled by the trial court.

Evidence presented in support of a summary judgment must be in the same admissible form as would be required in a conventional trial.  TEX.R.CIV.P. 166a(f); *United Blood Services v. Longoria*, 938 S.W.2d 29, 30 (Tex. 1997).  We review the trial court's decision to admit or exclude summary judgment evidence for an abuse of discretion.  *First State Bank of Mesquite v. Bellinger & Dewolf, LLP*, 342 S.W.3d 142, 147 (Tex.App.--El Paso 2011, no pet.); *Barraza v. Eureka Co.*, 25 S.W.3d 225, 228 (Tex.App.--El Paso 2000, pet. denied).  When reviewing matters committed to the trial court's discretion, a court of appeals may not substitute its own judgment for that of the trial court.  *Downer v. Aquamarine Operators, Inc.*, 701 S.W.2d 238, 241-42 (Tex. 1985); *First State Bank of Mesquite*, 342 S.W.3d at 147.

Hearsay is an out of court statement offered to prove the truth of the matter asserted.  TEX.R.EVID. 801(d) and 802; *Volkswagen of America, Inc. v. Ramirez*, 159 S.W.3d 897, 908 n.5 (Tex. 2004).  With regard to what Ramirez told Maxwell, we believe that the trial court could have overruled the objection because in the context of the probable cause issue, the statement was not offered for the truth of the matter asserted.  Instead, the statement could be offered for what Maxwell believed when she reported the possible crime to the police.  The probable cause inquiry does not focus on what the actual facts were, but on what the defendant honestly believed them to be.  *Digby*, 943 S.W.2d at 920-21.  If offered for that purpose, the statement is not hearsay.  *See In re Bexar County Criminal District Attorney's Office*, 224 S.W.3d 182, 188-89 (Tex. 2007)(suggesting documents from district attorney's office might come into evidence

---

[1]  The affidavit refers to Appellant as Elia Rich which is her maiden name.  The actual *El Paso Times* document was not attached to the affidavit or the motion for summary judgment.  See TEX.R.CIV. P. 166a(f)("Sworn or certified copies of all papers or parts thereof referred to in an affidavit shall be attached thereto or served therewith.").

"through a non-hearsay use"). We accordingly overrule Issue One as it relates Maxwell's affidavit.

Elia also objected to the affidavit of the assistant district attorney because it references *El Paso Times* documents which were not otherwise proved up under a hearsay exception. But whether the trial court erred or not in excluding this portion of the affidavit, the failure to exclude the reference to the advertisement would not be harmful error. TEX.R.APP. P. 44.1(a)(an appellant must establish the error was harmful and was calculated to cause and probably did cause the rendition of an improper judgment). The advertisement relates to the *prosecutor's* decision to present the case to the grand jury, and not Maxwell's state of mind in filing the charge. Because probable cause is measured from Maxwell's point of view, at the time she made the report, a newspaper advertisement discovered some time later by the authorities is immaterial to Maxwell's state of mind.

In *Akin v. Dahl,* for instance, Dahl brought suit for malicious prosecution against the Akins who had sought to be appointed as his guardians and who had him involuntarily hospitalized. 661 S.W.2d at 919. The Texas Supreme Court rejected attempts to demonstrate the existence of probable cause from matters occurring in subsequent legal proceedings after Dahl's confinement, and after the Akins had contacted legal authorities:

> Events subsequent to the action of confinement and legal proceedings may tend to show whether the action of the Akins turned out to be correct or incorrect, but is not material to the beliefs and motives at the time the proceedings were instituted. *Green v. Meadows*, 517 S.W.2d 799 (Tex.Civ.App.--Houston [1st Dist.] 1975) *rev'd on other grounds,* 524 S.W.2d 509 (Tex. 1975). It is the events prior to the institution of the proceedings which must be examined, and only those events, to determine if the defendants had probable cause to act.

*Id.* at 920; s*ee also Hernandez v. Mendoza*, 406 S.W.3d 351, 356-57 (Tex.App.--El Paso 2013, no pet.)(subsequent probable cause determination of the magistrate who issued the capias was

irrelevant in determining whether complaining witness had a reasonable belief that a crime was committed); *French,* 385 S.W.3d at 67 (probable cause determinations made by investigating officer and judge who issued arrest warrant were irrelevant in determining whether reasonable person would believe plaintiff committed theft before criminal proceedings were instituted). Accordingly, the issue of what the prosecutor later knew or believed is irrelevant to Maxwell's probable cause to report the alleged crime in the first place. Accordingly, any error in admitting the reference to the *El Paso Times* documents could not be harmful error. We overrule Issue One.

## PROBABLE CAUSE

In Issues Two, Three, Four, and Nine, Pettit contends in various ways that there was a genuine issue of material fact on the probable cause element of her malicious prosecution claim. Issues Two, Three, and Four specifically claim that Maxwell failed to present any evidence demonstrating probable cause. But the law presumes probable cause and effectively shifts the burden to Elia on this issue. *Suberu*, 216 S.W.3d at 792-93.

Given the shifting burden for probable cause, a traditional summary motion based on the probable cause element operates somewhat like a Rule 166a(i) "no evidence" motion for summary judgment. TEX.R.CIV.P. 166a(i) permits a party to move for a no-evidence summary judgment "without presenting summary judgment evidence," but stating "the elements as to which there is no evidence." While Maxwell did not move under Rule 166a(i), the summary judgment standard would be similar at least for the probable cause element. For instance, in *Digby v. Texas Bank*, 943 S.W.2d 914 (Tex.App.--El Paso 1997, writ denied), a case decided before the advent of the 166(a)(i) motion, we required the *non-movant plaintiff* to come forward with summary judgment proof to create a fact issue as to whether the defendant had probable cause to report a possible crime to the authorities. *Id*. at 920. Once they did so, the burden then

9

fell back on the defendant to prove probable cause as a matter of law.[2] Here, Elia needed to produce summary judgment evidence raising a genuine issue of material fact overcoming the presumption that Maxwell had probable cause. We accordingly overrule Issues Two, Three, and Four because they attempt to shift Elia's burden to Maxwell.

In Issue Nine, however, Elia contends that she presented sufficient controverting evidence to create a fact issue on the absence of probable cause. We agree. Both the Pettits' affidavits claim that Maxwell reported a theft of $200,000.00 or more of goods. Eugene's affidavit provides some basis to believe that Maxwell would not have a reasonable basis to value the goods at $200,000.00, even if some of her items were indeed sold at the yard sale. Eugene's affidavit further claimed that Maxwell obtained a total of $400,000.00 worth of property in the divorce, split between the real property (the house) and other personal property. Before the time of the yard sale, Maxwell had loaded a pick-up with her items from the house. Eugene averred that by the time of the yard sale, she had already removed "most of the valuable personal items which were in the residence." He claimed that the total value of the goods sold at the yard sale did not have a value of more than $500.00. Whatever value might be ascribed to the house, if "most" of the valuable personal items had already been removed, the remaining personal items could not have a value of $200,000.00.

Viewing this evidence in the light most favorable to Elia, as we must under the summary judgment standard, we believe that there is a fact issue as to the value of the property which Maxwell reported as stolen to the police. Even if she had probable cause to believe that one or

---

[2] Conversely, in *State v. Ninety Thousand Two Hundred Thirty-Five Dollars and No Cents in U.S. Currency ($90,235)*, 390 S.W.3d 289, 293 (Tex. 2013), a forfeiture case, the plaintiff carried the burden of proving (rather than negating) probable cause. Consequently in a traditional summary judgment motion the defendant was required to conclusively negate the existence of probable cause.

more of her items were sold in the yard sale, under the summary judgment evidence she reported that $200,000 was stolen, which caused Elia to be arrested on a first degree felony.[3]

Maxwell does not respond to the specific issues raised by Elia, but rather groups them together under a responsive heading stating: "[t]here is no absence of probable cause where Assistant District Attorney Cheri Shapleigh presented evidence to a grand jury which returned an indictment after its investigation." Under this heading, Maxwell claims that she was entitled to summary judgment under both the "initiation and procurement" element for a malicious prosecution claim, as well as the probable cause element.

As to the probable cause element, Maxwell's arguments all relate to the facts known to the district attorney's office at the time of the indictment, or at the time an arrest warrant was issued, or when the case was dismissed. As we have stated, however, none of those matters are relevant to what facts Maxwell knew when she reported the matter to the police at the outset. *Dahl*, 661 S.W.2d at 920; *Hernandez,* 406 S.W.3d at 356-57; *French*, 385 S.W.3d at 67.

### INITIATION OR PROCUREMENT

The second part of Maxwell's argument contends that the district attorney initiated or procured the prosecution by presenting the case to the grand jury. The trial court did not grant the summary judgment on that basis, but we have the discretion, in the interest of judicial economy, to consider that ground. C*ates,* 927 S.W.2d at 625-26; *Porter,* 406 S.W.3d at 792;

---

[3] At the time of the May 2007 yard sale, theft of $200,000 or more was a first degree felony offense. See Acts 2003, 78th Leg., ch. 393, § 20, 2003 TEX.GEN.LAWS 1633, 1639 (currently codified at TEX.PENAL CODE ANN. § 31.03 (West Supp. 2015). If the value of the stolen property was $500, the offense would be classified only as a Class A misdemeanor. *Id*. It is of course possible that had Maxwell only reported that $500 worth of property was taken that Elia might still have been arrested, but on a misdemeanor theft charge. In that event, she would conceivably incur some, or potentially even all of the damages that she claims in this suit. We think that prospect, however, goes to the damages element of the suit, which was not raised as a ground in the summary judgment motion, and thus is not a question before us. Nor has Maxwell raised that issue in her briefing. Maxwell has in fact not responded at all to the question of the value of the goods reported as stolen.

*Mendoza*, 406 S.W.3d at 354. Based on the record before us, however, we would still be confronted with a fact issue.

A defendant can liable for *procuring* a prosecution "if his actions are enough to cause the prosecution, and but for his actions the prosecution would not have occurred." *Lieck*, 881 S.W.2d at 292. Merely aiding or cooperating with the authorities cannot "cause" a criminal prosecution. *Id*. Nor does a person "procure a criminal prosecution when the decision whether to prosecute is left to the discretion of another person" such as law enforcement or a grand jury. *Id*. But even if the decision is ultimately left to law enforcement, when a person knowingly provides false information which causes a criminal prosecution, they have effectively procured the prosecution and may be liable. *Id*. at 292, 294 ("What is true is that a person who provides false information cannot complain if a prosecutor acts on it.").[4]

Eugene's affidavit claimed that all the items sold at the yard sale were his own. He also stated that Maxwell had already removed most of the valuable items she claimed to be hers prior to yard sale. The affidavit raises an inference that Maxwell's report to the police of a $200,000.00 theft was false. Accordingly, Maxwell has not conclusively shown that she did not procure the prosecution through a false statement. Nor is her argument that the assistant district attorney relied on some other piece of independently obtained evidence to obtain the indictment supported by the summary judgment proofs. It would have been Maxwell's burden in a Rule 166(a)c motion to show the existence of some fact known to the district attorney's office that

---

[4] The *Lieck* court provides this instruction for the jury:

> A person procures a criminal prosecution if his actions were enough to cause the prosecution, and but for his actions the prosecution would not have occurred. A person does not procure a criminal prosecution when the decision whether to prosecute is left to the discretion of another, including a law enforcement official or the grand jury, unless the person provides information which he knows is false. A criminal prosecution may be procured by more than one person.

*Id*. at 293.

caused the prosecution. At most, the assistant district attorney stated that she was presented with "witness statements, investigation reports, and other miscellaneous evidence" (including the *El Paso Times* records showing payment for the yard sale ad). Based on the assistant district attorney's "education, training and experience" she then presented the case to the grand jury. But the affidavit does not identify what any of these other materials contained, how they affected her decision to present the case to the grand jury, or what role Maxwell's initial report played in the process. We sustain Issue Nine.

## CONCLUSION

We overrule Issues One, Two, Three, and Four. Issues Six, Seven, and Ten all pertain to the procurement element which was not the basis upon which the trial court granted the summary judgment. While we decline to specifically address those issues, we have rejected Maxwell's invitation--which is effectively a cross-point--that asks us to affirm the summary judgment on the procurement element. Issue Five relates to the question of Pettit's actual innocence, but Maxwell never moved for summary judgment on that element and we decline to address the question. Similarly, Issue Eight relates to the element of malice, which was not the basis upon which the trial court granted summary judgment, nor is malice raised by Maxwell on appeal. We thus decline to address Issue Eight. Based on Issue Nine, which we sustain, we reverse the summary judgment below and remand the case to the trial court.

August 31, 2016

ANN CRAWFORD McCLURE, Chief Justice

Before McClure, C.J., Rodriguez, and Hughes, JJ.

13