ACCEPTED
12-14-00134-CV
TWELFTH COURT OF APPEALS
TYLER, TEXAS
2/17/2015 10:05:40 AM
CATHY LUSK
CLERK

## CAUSE NO. 12-14-00134-CV

IN THE COURT OF APPEALS OF TEXAS
TWELFTH JUDICIAL DISTRICT

FILED IN
12th COURT OF APPEALS
TYLER, TEXAS
2/17/2015 10:05:40 AM
CATHY S. LUSK
Clerk

AMERICAN IDOL, GENERAL, LP d/b/a The REO, and
RANDY HANSON a/k/a RANDALL HANSON,
Appellants

v.

PITHER PLUMBING CO., INC.,
Appellee

_____

On Appeal from Cause No. 2012-1842-A
In the 188th Judicial District Court of Gregg County, Texas
The Honorable David Brabham, Presiding

_____

BRIEF OF APPELLEE PITHER PLUMBING CO., INC.

_____

T. JOHN WARD, Jr.
State Bar No. 00794818
jw@wsfirm.com
CLAIRE ABERNATHY HENRY
State Bar No. 24053063
claire@wsfirm.com
BRETT F. MILLER
State Bar No. 24065750
bmiller@wsfirm.com
**WARD & SMITH LAW FIRM**
P. O. Box 1231
Longview, Texas 75606-1231
(903)757-6400 (Telephone)
(903)757-2323 (Facsimile)
**ATTORNEYS FOR APPELLEE**

**-ORAL ARGUMENT REQUESTED-**

## IDENTITY OF PARTIES AND COUNSEL

| Party | Counsel |
|---|---|
| American Idol, General, LP, d/b/a The Reo, and Randy Hanson a/k/a Randall Hanson,<br><br>**Defendants/Appellants** | Ken W. Good<br>The Good Law Firm<br>Law Office of Ken W. Good, PLLC<br>5604 Old Bullard Road, Suite 102<br>Tyler, Texas 75703<br>(903) 579-7507<br>(866) 381-0455<br>E-mail:  keng@tyler.net<br>**Appellate Counsel**<br><br>Lisa Moran<br>Evan Barat<br>Moran Law Firm<br>100 E. Ferguson, Ste. 1018<br>(903) 504-5004 (telephone)<br>(903) 595-4534 (facsimile)<br>E-mail:  info@moran-lawfirm.com<br>**Trial Counsel** |

| | |
|---|---|
| Pither Plumbing Co., Inc.,<br>**Plaintiff/Appellee** | T. John Ward, Jr.<br>State Bar No.  00794818<br>Clarie Abernathy Henry<br>State Bar No. 24053063<br>Brett F. Miller<br>State Bar No. 24065750<br>WARD & SMITH LAW FIRM<br>P.O. Box 1231<br>Longview, Texas 75606-1231<br>(903) 757-6400 (telephone)<br>(903) 757-2323 (facsimile)<br>E-mail: jw@wsfirm.com,<br>claire@wsfirm.com, bmiller@wsfirm.com<br>**Appellate Counsel**<br><br>T. John Ward, Jr.<br>State Bar No.  00794818<br>Akilah F. Craig<br>State Bar No. 24076194<br>WARD & SMITH LAW FIRM<br>P.O. Box 1231<br>Longview, Texas 75606-1231<br>(903) 757-6400 (telephone)<br>(903) 757-2323 (facsimile)<br>E-mail: jw@wsfirm.com<br>**Trial Counsel** |

# TABLE OF CONTENTS

IDENTITY OF PARTIES AND COUNSEL ........................................................ii-iii

TABLE OF CONTENTS.................................................................... iv-v

INDEX OF AUTHORITIES.................................................................vi-viii

RECORD REFERENCE ABBREVIATIONS ........................................................ix

STATEMENT OF THE CASE.................................................................x

ISSUES PRESENTED.................................................................xi

STATEMENT OF FACTS .................................................................1

1.      Pither Plumbing Co., Inc. provided plumbing services to American Idol
        General, LP d/b/a the Reo.................................................................1

2.      The total amount billed for Pither's services was $17,372.03, which
        American Idol refused to pay.............................................................2

3.      During his deposition, Randall Hanson admitted numerous facts favorable to
        Appellee's claims.......................................................................2

4.      Hanson completely changed his testimony in an affidavit submitted to avoid
        summary judgment.......................................................................3

SUMMARY OF ARGUMENT .................................................................5

ARGUMENT .................................................................6

1.      Standards of Review.................................................................6
        A.      Exclusion of Summary Judgment Evidence ........................................6
        B.      Summary Judgment.................................................................6

2.      The trial court did not err in granting summary judgment for Appellee
        because the only controverting evidence offered by Appellants was Hanson's

Affidavit, which the trial court properly disregarded under the sham-affidavit doctrine.  (Appellee's Issue No. 1, corresponds to Appellants' Issue No. 1). ..............................................................................................8

    A.    The "Sham Affidavit" Doctrine...........................................................8

    B.    Hanson's Affidavit is a sham..............................................................9

    C.    The trial court implicitly sustained Appellee's objection to Hanson's Affidavit .......................................................................................21

    D.    Even under a de novo review, this Court should adopt the sham-affidavit doctrine and affirm the summary judgment .........................24

        I.    The sham-affidavit doctrine is widely followed in Texas and across the country……………………………………………………25

        II.    The sham-affidavit doctrine promotes the efficient evaluation and disposition of lawsuits……………………………………..29

    E.    Response to Appellants' Other Arguments………………………….32

        I.    No pleading to support suit on a sworn account or claim for quantum meruit………………………………………..………….32

        II.    Hanson has no liability…………………….…..……………..33

        III.    The trial court erred in granting summary judgment on damages…………………………………………………..………34

3.    The trial court did not err in awarding Appellee its attorney's fees (no corresponding numbered issue in Appellants' Brief). ...................................35

PRAYER.......................................................................................................36

APPENDIX ..................................................................................................38

1.    Affidavit of Randall Hanson....................................................................38

# INDEX OF AUTHORITIES

**Cases**

*Barth v. Royal Ins. Co.*, No. 13-02-688-CV, 2004 Tex. App. LEXIS 11319, *9, n.5 (Tex. App.—Corpus Christi Dec. 16, 2004, no pet.) (mem. op.)……...………….25

*Benson v. Gaston*, No. 12-13-00287-CV, 2014 Tex. App. LEXIS 2753, *3-4, n.2 (Tex. App.—Tyler Mar. 12, 2014, pet. denied)…………………………….8, 28, 29

*Burkett v. Welborn*, 42 S.W.3d 282, 286 (Tex. App.—Texarkana 2001, no pet.)..............................................................................................................8, 25

*Cantu v. Peacher*, 53 S.W.3d 5, 10 (Tex. App.—San Antonio 2001, pet. denied)…………………………………………………………………….8, 9, 25

*Davis v. City of Grapevine*, 188 S.W.3d 748, 755-756 (Tex. App.—Fort Worth 2006, pet. denied)…………………………………………………………………25

*Del Mar College Dist. v. Vela*, 218 S.W.3d 856, 862, n.6 (Tex. App.—Corpus Christi 2007, no pet.)…………………...…………………………………………25

*Enernational Corp. v. Exploitation Eng'rs, Inc.*, 705 S.W.2d 749, 750 (Tex. App.—Houston [1st Dist.] 1986, writ ref'd n.r.e.)……………………………..32

*Eslon Thermoplastics v. Dynamic Sys., Inc.*, 49 S.W.3d 891, 901 (Tex. App.—Austin 2001, no pet.)…………………...…………………………………………25

*Fair v. Arp Club Lake, Inc.*, 437 S.W.3d 619, 623 (Tex. App.—Tyler 2014, no pet.)…………………………………………………………………………………7

*Farroux v. Denny's Restaurants*, 962 S.W.2d 108, 111 (Tex. App.—Houston [1st Dist.] 1997, no pet.)…………………...……………………………………..8, 25

*First State Bank of Mesquite v. Bellinger & DeWolf, LLP*, 342 S.W.3d 142, 147 (Tex. App.—El Paso 2011, no pet.)…………………………….....6, 8, 24, 25, 28

*Frazier v. Yu*, 987 S.W.2d 607, 610 (Tex. App.—Fort Worth 1999, pet. denied)………………………………………………………………………...22, 23

*Fred Loya Ins. Agency, Inc. v. Cohen*, 446 S.W.3d 913, 926-928 (Tex. App.—El Paso 2014, pet. filed)……………………………………………………...…28

*Gaines v. Hamman*, 358 S.W.2d 557 (Tex. 1962)……………………………26, 27

*Hassell v. Mo. Pac. R.R. Co.*, 880 S.W.2d 39, 41, n.1 (Tex. App.—Tyler 1994, writ denied)……………..……………………………….………………..29

*Kao Holdings, L.P. v. Young*, 261 S.W.3d 60, 63-64 (Tex. 2008)…..……………34

*Marx v. Elec. Data Sys. Corp.*, 418 S.W.3d 626, 637-638 (Tex. App.—Amarillo 2009, no pet.)……………………………………………………………….22, 23

*Nixon v. Mr. Prop. Mgmt. Co.*, 690 S.W.2d 546, 548-549 (Tex. 1985)……………7

*Pando v. Southwest Convenience Stores, LLC*, 242 S.W.3d 76, 79-80 (Tex. App.—Eastland 2007, no pet.)…………………………………………………25

*Patrick v. McGowan*, 104 S.W.3d 219, 221 (Tex. App.—Texarkana 2003, no pet.)…………………………………………………………………..6, 24

*Perma Research & Dev. Co. v. Singer Co.*, 410 F.2d 572 (2d Cir. 1969)………....27

*Pierce v. Wash. Mut. Bank*, 226 S.W.3d 711, 717-718 (Tex. App.—Tyler 2007, pet. denied)…………………………………………………………....28, 29

*Plunkett v. Conn. Gen. Life Ins. Co.*, 285 S.W.3d 106, 119 (Tex. App.—Dallas 2009, pet. denied)…………………………………………………………25

*Randall v. Davis Power & Light Co.*, 752 S.W.2d 4 (Tex. 1988) (per curiam)...................................................................................................26, 27

*Slagle v. Prickett*, 345 S.W.3d 693, 702 (Tex. App.—El Paso 2011, no pet.)……22

*S.W.S. Erectors v. Infax, Inc.*, 72 F.3d 489, 495-496 (5th Cir. 1996)……………..25

*Tex. Dep't of Parks & Wildlife v. Miranda*, 133 S.W.3d 217, 228 (Tex. 2004)….29

*Thompson v. City of Corsicana Hous. Auth.*, 57 S.W.3d 547, 557-558 (Tex. App.—Waco 2001, no pet.)………………………………………………….….25

*Trostle v. Trostle*, 77 S.W.3d 908, 915 (Tex. App.—Amarillo 2002, no pet.)…....25

*Unterreiner v. Volkswagen of Am.*, 8 F.3d 1206, 1212 (7th Cir. 1993), overruled on other grounds by *Hill v. Tangherlini*, 724 F.3d 965, 967, n.1 (7th Cir. 2013)……31

*Via Net v. TIG Ins. Co.*, 211 S.W.3d 310, 313 (Tex. 2006) (per curiam)………....32

*Walker v. Gutierrez*, 111 S.W.3d 56, 60, n.1 (Tex. 2003)………………...………23

## Statutes

Tex. Bus. Org. Code § 152.306……………….…………………………………….33

Tex. Civ. Prac. & Rem. Code 17.022……………………………………………..34

Tex. Civ. Prac. & Rem. Code § 38.001, *et seq.*………..…………………………….35

## Rules

Tex. R. Civ. P. 93……………………………………………………………………33

Tex. R. Civ. P. 94……………………………………………………………………33

Tex. R. Civ. P. 166a(c)……………………………………………………..31, 32-33

Tex. R. App. P. 33………………………………………...…………………..22, 32

## Other Authorities

Randy Wilson, *The Sham Affidavit Doctrine in Texas*, 66 TEX. B.J. 962, 962–69 (2003)……………………………………………………………….8, 25, 26, 27, 30

## RECORD REFERENCE ABBREVIATIONS

The Reporter's Record in this case is comprised of one volume, from a hearing on February 6, 2014 on Plaintiff/Appellee's Second Motion for Summary Judgment and on Defendants/Appellants' Motion for Continuance. The Reporter's Record will be identified as "RR", followed by the page and line number of the referenced testimony. For example, "RR 10/2-5" refers to page 10, lines 2-5 of the Reporter's Record.

The Clerk's Record in this case consists of one (1) volume, as does the Supplemental Clerk's Record. Reference to the Clerk's Record will be by the prefix "CR," and reference to the Supplemental Clerk's Record will be by the prefix "SCR," followed by the page number in the record and, where appropriate, a page and/or line citation. For example, "CR 105 (10/1-5)" refers to page 105 of the Clerk's Record, a deposition excerpt, and specifically lines 1-5 on page 10 of the deposition transcript. Also as an example, "CR 47 (¶ 11)" refers to page 47 of the Clerk's Record, specifically paragraph no. 11 on that page.

# STATEMENT OF THE CASE

| | |
|---|---|
| *Nature of the Case* | Suit on a sworn account, for quantum meruit, breach of contract, and attorney's fees arising from Defendants/Appellants' failure to pay Plaintiff/Appellee for agreed-upon plumbing services. CR 4, 45, 252; SCR 6. |
| *Course of the Proceedings* | On February 6, 2014, the trial court heard Plaintiff/Appellee's Second Motion for Traditional Summary Judgment. RR 1, 6; CR 50. |
| *Trial Court* | 188th Judicial District Court of Gregg County, Texas, The Honorable David Brabham, Presiding |
| *Trial Court's Disposition of the Case* | On February 21, 2014, the trial court signed its Order Granting Plaintiff's Second Motion for Traditional Summary Judgment, awarding Plaintiff/Appellee judgment against Appellants in the amount of $17,169.48 on its claims for breach of contract, suit on a sworn account, and quantum meruit. CR 274. The trial court also awarded Appellee attorney's fees of $7,847.00, pre- and post-judgment interest, and court costs. CR 274. On March 21, 2014, Appellants filed a Motion for New Trial and, on May 21, 2014, filed their Notice of Appeal. CR 276, 282. |

## ISSUES PRESENTED

Issue No. 1: The trial court did not err in granting summary judgment for Appellee because the only controverting evidence offered by Appellants was the sham affidavit of Randall Hanson, which the trial court properly disregarded. (corresponds to Appellants' Issue No. 1).

Issue No. 2: The trial court did not err in awarding Appellee its attorney's fees. (no corresponding numbered issue in Appellants' Brief).

TO THE HONORABLE JUSTICES OF THE TWELFTH COURT OF APPEALS:

Appellee Pither Plumbing Co., Inc. files this Brief in response to the Brief of Appellants American Idol General, LP d/b/a the Reo and Randy Hanson a/k/a Randall Hanson:

## STATEMENT OF FACTS

Because of its dissatisfaction with omissions and errors in Appellants' Statement of Facts, Appellee submits the following pursuant to TEX. R. APP. P. 38.2(a)(1)(B):

**1.  Pither Plumbing Co., Inc. provided plumbing services to American Idol General, LP d/b/a the Reo.**

Pither Plumbing Co., Inc. ("Appellee") is engaged in the business of providing plumbing services and related materials.  CR 135 (¶ 3).  On or about the following dates, Appellee entered into oral agreements with Appellant American Idol General, LP d/b/a the Reo ("American Idol") to provide it with plumbing services and related materials at the Reo, a famous nightclub and dance hall in Gregg County, Texas:  January 18, 2010; May 27, 2010; August 20, 2010; November 30, 2011; December 5, 6, 8, 9, 15, 16, 19, 20, 21, 22, 23, 28, 29, 30 and 31, 2011; and January 6, 10, and 12, 2012.  CR 135-136 (¶ 3-4); CR 61-102.  The Reo is located at 4716 W. Loop 281, on the southeast corner of the intersection of State Highway 31 and W. Loop 281 in Longview.  CR 61.  Typically, either

Appellant Randy Hanson a/k/a Randall Hanson ("Hanson"), general partner of American Idol, or C.J. Broers, its general manager, would request Appellee to perform plumbing services; Appellee would perform the requested and agreed-upon services; and Appellee would send an invoice to American Idol for payment. CR 136 (¶ 5); CR 61-102.

**2.      The total amount billed for Pither's services was $17,372.03, which American Idol refused to pay.**

As reflected in the invoices submitted to American Idol, the total amount charged for Appellee's plumbing services was $17,372.03.  CR 137 (¶ 6); CR 61-102.  The charges were agreed upon and in keeping with the usual and customary amount for plumbing services in the area, and the parties understood that Appellee expected payment in return for its services.  CR 136 (¶ 4); CR 137 (¶ 7). Appellants refused to pay for the plumbing services provided by Appellee, forcing it to hire attorneys, send demand letters, and ultimately file the underlying lawsuit. CR 137 (¶ 8-9); CR 145-152.

**3.      During his deposition, Hanson admitted numerous facts favorable to Appellee's claims.**

During his deposition, Hanson admitted the following:

    A. American Idol was in the nightclub business, operating under the assumed name of "The Reo."  CR 105 (10/3-25); CR 222.

    B. Appellee had performed plumbing services for American Idol in the past, and American Idol paid for those services by checks drawn on its

checking account.  CR 107 (22/1-6, 25); CR 110 (30/19-23); CR 222-223.

C. Hanson was a general partner of American Idol during the relevant time.  CR 104 (9/3 – 10/2); CR 112-131 (33/8 – 52/14).

D. C.J. Broers was American Idol's employee and general manager.  CR 106 (19/13-20); CR 112 (33/9-16).

E. C.J. Broers, on behalf of American Idol, always called Appellee to get plumbing work done at the Reo.  CR 119 (40/5-16); CR 225-226.

F. If C.J. Broers was calling Appellee for plumbing services, it would be for work at the Reo (i.e., American Idol), not at the Reo Palm Isle Club.  CR 111 (32/2-17); CR 120 (41/2-13); CR 129 (50/1-8); CR 130-131 (51/19 – 52/1).

G. On at least one occasion, Hanson met with Appellee's employees at the Reo and requested them to perform plumbing services.  CR 120-122 (41/14 – 43/4); CR 123 (44/12-20); CR 229.

H. Appellee performed the plumbing services at issue at the Reo.  CR 111 (32/2-17); CR 120 (41/2-13); CR 124-125 (45/24 – 46/3); CR 129 (50/1-8); CR 130-131 (51/19 – 52/1); CR 224.

**4.    Hanson completely changed his testimony in an affidavit submitted to avoid summary judgment.**

On December 16, 2013, after it obtained Hanson's favorable deposition testimony, Appellee filed its Second Motion for Traditional Summary Judgment ("Motion for Summary Judgment").  CR 50.  On January 30, 2014, Appellants filed their Response and attached the Affidavit of Randall Hanson ("Hanson's

Affidavit"). CR 169, 186. Hanson's Affidavit included the following statements, which completely contradicted his prior deposition testimony:

A. American Idol did not operate the club known as "The Reo" during the relevant time period from January 18, 2010 – January 12, 2012. CR 187.

B. American Idol never paid for plumbing services, or any other services that were purported to be performed at the Reo Palm Isle Club, located at 4716 W. Loop 281, Longview, Texas. CR 188.

C. American Idol did not have a checking account. CR 187.

D. C.J. Broers was not an employee of American Idol. CR 187.

E. American Idol had no employees during the relevant time period from January 18, 2010 – January 12, 2012. CR 187.

F. C.J. Broers had no authority to enter into construction contracts on behalf of American Idol. CR 187.

G. American Idol never received plumbing services from Appellee. It could not have requested or received services, as it only held a liquor license. CR 187.

H. Neither American Idol, nor any agent of American Idol, including Hanson or C.J. Broers, ever entered into an agreement with Appellee regarding plumbing services that were purported to be performed at the Reo Palm Isle Club, located at 4716 W. Loop 281, Longview, Texas. CR 188.

Hanson's Affidavit does not offer any explanation for his change in testimony. *See* CR 186-188. In its summary-judgment reply, Appellee objected to Hanson's Affidavit at length under the "sham affidavit" doctrine and requested the trial court

4

to strike the affidavit.  CR 220-221, 230.  On February 6, 2014, the trial court held a hearing on Appellee's Motion for Summary Judgment.  RR 1, 6.  On February 21, 2014, the trial court signed its Order granting Appellee's Motion for Summary Judgment, and this appeal ensued.  CR 274.

## SUMMARY OF ARGUMENT

This appeal lives or dies with Hanson's Affidavit, the only material, controverting evidence offered by Appellants in response to Appellee's Motion for Summary Judgment.  Hanson's Affidavit directly contradicted his prior deposition testimony on several material points in the case—without any explanation for the change.  Appellee objected to Hanson's Affidavit under the "sham affidavit" doctrine, and the trial court implicitly sustained that objection and disregarded Hanson's Affidavit.  Accordingly, the standard of review is for an abuse of discretion, and this Court must affirm because Appellants failed to show that the trial court's ruling was in error and probably caused the rendition of an improper judgment.  But even if this Court finds that the trial court failed to rule on Appellee's objection to Hanson's Affidavit, the standard of review is de novo and, even under that standard, this Court should adopt the sham-affidavit doctrine, disregard Hanson's Affidavit, and affirm summary judgment.

**ARGUMENT**

**1.     Standards of Review.**

    **A.     Exclusion of Summary Judgment Evidence.**

A trial court's ruling concerning the admission or exclusion of summary judgment evidence is reviewed for an abuse of discretion.  *First State Bank of Mesquite v. Bellinger & DeWolf, LLP*, 342 S.W.3d 142, 147 (Tex. App.—El Paso 2011, no pet.); *Patrick v. McGowan*, 104 S.W.3d 219, 221 (Tex. App.—Texarkana 2003, no pet.).  A trial court abuses its discretion when it acts "in an arbitrary or unreasonable manner without reference to any guiding rules or principles." *Bellinger & DeWolf*, 342 S.W.3d at 147.  When reviewing a matter committed to the trial court's discretion, a court of appeals may not substitute its own judgment for that of the trial court.  *Id.*  "To obtain reversal of a judgment based on error in the admission or exclusion of evidence, an appellant must show that the trial court's ruling was in error and that the error probably caused the rendition of an improper judgment." *McGowan*, 104 S.W.3d at 221 (citing Tex. R. App. P. 44.1(a)(1)).

    **B.     Summary Judgment.**

A trial court's grant of summary judgment is reviewed de novo under the following standards:

(1) The movant for summary judgment has the burden of showing that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law;

(2) In deciding whether there is a disputed material fact issue precluding summary judgment, evidence favorable to the non-movant will be taken as true; and

(3) Every reasonable inference must be indulged in favor of the non-movant and any doubts resolved in its favor.

*Nixon v. Mr. Prop. Mgmt. Co.*, 690 S.W.2d 546, 548-549 (Tex. 1985); *Fair v. Arp Club Lake, Inc.*, 437 S.W.3d 619, 623 (Tex. App.—Tyler 2014, no pet.). Once the movant establishes a right to summary judgment, "the non-movant has the burden to respond to the motion and present to the trial court any issues that would preclude summary judgment." *Arp Club Lake*, 437 S.W.3d at 623. If the trial court grants summary judgment, but its order does not specify the grounds it relied upon, the court of appeals "must affirm summary judgment if any of the summary judgment grounds are meritorious." *Id*.

**2.** **The trial court did not err in granting summary judgment for Appellee because the only controverting evidence offered by Appellants was Hanson's Affidavit, which the trial court properly disregarded under the sham-affidavit doctrine. (Appellee's Issue No. 1, corresponds to Appellants' Issue No. 1).**

**A.** **The "Sham Affidavit" Doctrine.**

Under the "sham affidavit" doctrine, a party cannot file an affidavit to contradict his own deposition testimony—without any explanation for the change in testimony—for the purpose of creating a fact issue to avoid summary judgment. *E.g., Benson v. Gaston*, No. 12-13-00287-CV, 2014 Tex. App. LEXIS 2753, *3-4, n.2 (Tex. App.—Tyler Mar. 12, 2014, pet. denied); *First State Bank of Mesquite v. Bellinger & DeWolf, LLP*, 342 S.W.3d 142, 148 (Tex. App.—El Paso 2011, no pet.); *Burkett v. Welborn*, 42 S.W.3d 282, 286 (Tex. App.—Texarkana 2001, no pet.); *Cantu v. Peacher*, 53 S.W.3d 5, 10 (Tex. App.—San Antonio 2001, pet. denied); *Farroux v. Denny's Restaurants*, 962 S.W.2d 108, 111 (Tex. App.—Houston [1st Dist.] 1997, no pet.). *See also* Randy Wilson, *The Sham Affidavit Doctrine in Texas*, 66 TEX. B.J. 962, 962–69 (2003). Without an explanation for the change in testimony, it is assumed that the sole purpose of the affidavit was to avoid summary judgment and, therefore, the affidavit presents merely a "sham" fact issue which the trial court should disregard. *Gaston*, 2014 Tex. App. LEXIS at *3-4; *Bellinger & DeWolf*, 342 S.W.3d at 148; *Welborn*, 42 S.W.3d at 286.

The question of whether the affidavit contradicts the affiant's prior deposition testimony requires the court to "examine the nature and extent of the differences in the facts asserted in the deposition and the affidavit." *Cantu*, 53 S.W.3d at 10. If the differences are merely "variations on a theme, consistent in the major allegations but with some variances of detail," the affidavit may be used for impeachment but is not wholly ineffective. *Id.* "If, on the other hand, the subsequent affidavit clearly contradicts the witness's earlier testimony involving the suit's material points, without explanation, the affidavit must be disregarded and will not defeat the motion for summary judgment." *Id.* at 10-11.

**B.     Hanson's Affidavit is a sham.**

Below is a table that compares Hanson's sworn deposition testimony with his subsequently-filed affidavit, offered by Appellants to defeat summary judgment. The statements in Hanson's Affidavit clearly contradict his prior deposition testimony on material points in the case, including whether American Idol requested or received plumbing services and whether C.J. Broers was an employee/agent of American Idol.

| Sworn Deposition Testimony | Statements from Affidavit |
|---|---|
| **Ms. Craig**: Are you aware of the fact that American Idol General, L.P. has an assumed name of The Reo? **Mr. Hanson**: Yes, I am aware of that. **Ms. Craig**: Have you mark this. And I'm showing you what's been marked as | American Idol General, L.P. did not operate the club known as "The Reo" during the relevant time period from January 18, 2010-January 12-2012. *(CR 187)* |

| | |
|---|---|
| Plaintiff's Exhibit 2. What is that document?<br>**Mr. Hanson**: It's an assumed name certificate for a limited partnership.<br>**Ms. Craig**: And when was that assumed name certificate filed with the Secretary of State?<br>**Mr. Hanson**: It says here January 31st, 2006.<br>**Ms. Craig**: And based on that document do you know when the assumed name The Reo will expire from. I believe it says on here that the assumed name will expire in 2016; is that correct?<br>**Mr. Hanson**: 2016, correct, yes.<br>*(CR 105 (10/3-25); CR 222)*<br><br>**Ms. Craig**: All right. I want to talk to you a little bit about American Idol General, L.P. What kind of business is that?<br>**Mr. Hanson**: American Idol General was a corporate entity started, gosh, around 2003 or something like that, for a, be primarily the nightclub business.<br>*(CR 222)* | |
| **Ms. Craig**: Okay. So based on the fact that the assumed name of the American Idol General is The Reo, American Idol General is sort of a mouthful, I'm going to refer to it as The Reo. So can we agree that if I say The Reo, I'm talking about American Idol General, L.P.?<br>**Mr. Hanson**: That would be fine.<br>*(CR 222)* | American Idol General, L.P. had no employees during the relevant time period from January 18, 2010-January 12, 2012.<br>*(CR 187)*<br><br>C.J. Broers was not an employee of American Idol General, L.P.<br>*(CR 187)* |

| | |
|---|---|
| **Ms. Craig**: Okay.  Who is C.J. Broers, and I'm just saying it the way I think it's pronounced?<br>**Mr. Hanson**: He was our general manager for, and I, I think he was on the liquor license too, on the beer and wine permit.<br>**Ms. Craig**: And when you say "for us", do you mean for The Reo?<br>**Mr. Hanson**: For The Reo, yes.<br>*(CR 106 (19/13-20))* | |
| **Ms. Craig**: Do you see this check that's been marked as Plaintiff's Exhibit 7?<br>**Mr. Hanson**: I do.<br>Ms. Craig: Do -- whose account did that check come out from?<br> **Mr. Hanson**: The Reo.<br> **Ms. Craig**: Whose signature is on that check?<br> **Mr. Hanson**: It looks to be a bookkeeper, some – I think it was our bookkeeper at the time.<br>*(CR 222; CR 107 (22/1-6))*<br><br>**Ms. Craig**: Okay.  Now, do you see that there is also a payment for, on January 27th, 2010, there's a payment for 303.10?<br>**Mr. Hanson**: Uh-huh (yes).<br> (Exhibit 8 marked)<br> **Ms. Craig**: Whose account was that check taken out of?<br>**Mr. Hanson**: The Reo.<br>*(CR 107 (22/25); CR 223)*<br><br>**Ms. Craig**: Okay.  There is a also a payment for $154.91 on February 20th, 2010; do you see that on Exhibit 6? | American Idol General, L.P. did not have a checking account.<br>*(CR 187)*<br><br>American Idol General, L.P. never paid for plumbing services, or any other services that were purported to be performed at Reo Palm Isle Club, located at 4716 W. Loop 281, Longview, Texas.<br>*(CR 188)* |

| | |
|---|---|
| **Mr. Hanson**: Correct.<br>**Ms. Craig**: Now, Exhibit 10, do you see whose account the check was taken out, taken out of?<br>**Mr. Hanson**: The Reo.<br>*(CR 223)*<br><br>**Ms. Craig**: I'm going to give you 9. And there is also a payment on July 13th, 2010 for $229.31.  Do you see that on Exhibit 6?<br>**Mr. Hanson**: Correct.<br>**Ms. Craig**: Exhibit 9, where was the check written from, what account?<br>**Mr. Hanson**: The Reo.<br>*(CR 223)*<br><br>**Ms. Craig**: And based on Exhibits 7, 8, 9, and 10, the fact that the checks were made from The Reo's account gives you a basis for believing that the work was done at The Reo, correct?<br>**Mr. Hanson**: Correct.<br>*(CR 110 (30/19-23))* | |
| **Ms. Craig**: And based on Exhibits 7, 8, 9, and 10, the fact that the checks were made from The Reo's account gives you a basis for believing that the work was done at The Reo, correct?<br>**Mr. Hanson**: Correct.<br>*(CR 110 (30/19-23))*<br><br>**Ms. Craig**: Do you remember calling Pither Plumbing to ask for that work to be done?<br>Mr. Hanson: The only -- I don't recall calling.  I recall meeting one of the employees or one of his guys there, and | American Idol General, L.P.  never received services from Pither Plumbing, Inc. It could not have requested or received services, as it only held a liquor license.<br>*(CR 187)* |

| | |
|---|---|
| said we had to remove these troughs and put urinals in.<br>**Ms. Craig**: Okay.  So you were at the site of The Reo when that work was being done?<br>**Mr. Hanson:** I was at the site.  I was in and out, you know, because I didn't drive over here all the time.<br>**Ms. Craig**: Okay.<br>**Mr. Hanson**: But I remember, you know, talking about taking those troughs out and putting urinals in.<br>**Ms. Craig**: So you specifically asked for that work to be done?<br>**Mr. Hanson**: For that particular scope of work.<br>*(CR 120-122 (41/14 – 43/4))*<br><br>**Ms. Craig**: The fact that it's billed to The Reo Pale Isle, we can agree that that was an error on Pither Plumbing's part, because the work was actually done at The Reo, correct?<br>**Mr. Hanson:** Right.<br>*(CR 124-125 (45/24 – 46/3))*<br><br>**Ms. Craig**: Now after looking at all the invoices that I've showed you, Exhibit 24 which reflects all of them, do you agree that Pither Plumbing performed a service for The Reo?<br>**Mr. Hanson**: I would agree to that.<br>*(CR 224)* | |
| **Ms. Craig:**  Now, this is Exhibit 13, invoice 1248 related to that Exhibit Number 11.  Who called to have that work done?<br>**Mr. Hanson:**     Looks like C.J. again. | C.J. Broers had no authority to enter into construction contracts on behalf of American Idol General, L.P.<br>*(CR 187)* |

**Ms. Craig:** And C.J. is that same employee, at least at that time, was an employee of The Reo and not The Reo Palm Isle Club?

**Mr. Hanson:** Yeah, he was an employee, he was like the general manager.

*(CR 112 (33/9-16))*

**Ms. Craig**: And at no point did you call after that work was done to say that the work wasn't done very well?

**Mr. Hanson**: Again, I'm seeing this for the first time. And, you know, I lived in Tyler, he was over here. I came over here once a week on Saturdays. And my whole thing was, if there was a problem, fix it, and just, you know, unless it's really that important, don't call me.

*(CR 112 (33/17-25))*

**Ms. Craig**: Did you ever call Pither Plumbing to get work done at The Reo?

**Mr. Hanson**: I don't recall ever calling Pither; C.J. always did that. So I don't know why I would have all of the sudden. So I don't recall that.

**Ms. Craig**: Okay. Are you saying that you never called Pither Plumbing to get work done?

**Mr. Hanson**: I think the only time I've ever called Pither was on the skating/soccer field. Now, if for some reason I did call, I don't recall it. But, I mean, C.J. just handled all that stuff, so. He was always the one that made the calls.

*(CR 119 (40/5-16))*

14

**Ms. Craig**: Okay.  I'm handing you Exhibit 21.  Who called for that work to be done at The Reo?

**Mr. Hanson**: It would appear C.J.

**Ms. Craig**: The fact that C.J. called for the work to be done, do you know that that means, or do you understand that that means the work was actually done at The Reo and not at The Reo Palm Isle Club?

 Mr. Hanson: I would assume that, yes.

*(CR 129 (50/1-8))*

**Ms. Craig**: Now, C.J. when he called for Pither Plumbing to get work done for The Reo was acting on behalf of The Reo?

**Mr. Hanson**: Yeah.

*(CR 225)*

**Ms. Craig**: And you'd agree that based on at least the call sheets that were included in some of these invoices, you would actually call to have or if you were on site, you would ask for work to get done?

**Mr. Hanson**: If I ever called over there, which I don't, I don't ever recall on that, because it was just, I have always, hey, C.J., get this, get that, you know, and then, you know, he would handle that.

*(CR 225-226)*

**Ms. Craig**: Exhibit Number 12, do you know who called for that work to be done? And you don't have to guess, you can turn to page 2.

**Mr. Hanson**: I don't see where who called for it.

**Ms. Craig**: Do you see in the area that says "phone call"? It says, "phone 753-4440 fax/cell C.J. Then next to message it says, "(903) 752-0686"?

**Mr. Hanson**: That would be that one, that phone number, so I'm just assuming C.J. would have made that call.

**Ms. Craig**: And if C.J. made the call for the work to be done, then it's work that's being done at The Reo, correct?

**Mr. Hanson**: Correct.

**Ms. Craig:** And that's not work that's being done at The Reo Palm Isle Club?

**Mr. Hanson**: Correct.

*(CR 111 (32/2-17))*

**Ms. Craig:** Now, this is Exhibit 13, invoice 1248 related to that Exhibit Number 11. Who called to have that work done?

**Mr. Hanson:** Looks like C.J. again.

**Ms. Craig:** And C.J. is that same employee, at least at that time, was an employee of The Reo and not The Reo Palm Isle Club?

**Mr. Hanson:** Yeah, he was an employee, he was like the general manager.

*(CR 112 (33/9-16))*

**Ms. Craig:** Now finally, on Exhibit 11 there is that invoice 3160, do you see that?

American Idol General, L.P., nor any agent of American Idol General, L.P., including Randall Hanson or C.J. Broers ever entered into an agreement with Pither Plumbing regarding plumbing services that were purported to be performed at the Reo Palm Isle Club, located at 4716 W. Loop 281, Longview, Texas.

*(CR 188)*

16

**Mr. Hanson:** Correct.

**Ms. Craig:** I'm showing you Exhibit Number 14 which is invoice number 3160 for 811.33, do you see that?

**Mr. Hanson:** Correct.

**Ms. Craig:** Who called for that work to be done?

**Mr. Hanson:** Again, we're going to assume that that number was C.J.'s number at the time, so I'm going to say C.J.

*(CR 114 (35/5-14))*

**Ms. Craig:** I'm handing you Exhibit 16. What is that document; do you know what that is?

**Mr. Hanson:** I don't know what it is.

**Ms. Craig:** It says on there that Randy Hanson called to get --

**Mr. Hanson:** Where does it say that?

**Ms. Craig:** It says, "Randy Hanson", correct?

**Mr. Hanson:** It says "for Randy Hanson", but --

**Ms. Craig:** But if it's a document from Pither
Plumbing, then it would not be a message for Randy Hanson, correct? We could assume that the message wasn't being left for you at Pither Plumbing?

**Mr. Hanson:** Correct.

*(CR 118-119 (39/17 – 40/4))*

**Ms. Craig:** I'm handing you -- and I can get back now, I think we're done with that. Exhibit 17, have you ever seen that document?

**Mr. Hanson:** I have not.

**Ms. Craig:** Do you know who called for that work to be done?

**Mr. Hanson:** Well, again, it looks like it says C.J. here.

**Ms. Craig:** And if C.J. called for work to be done, then it would be for work that's been done at The Reo, not The Reo Palm Isle?

**Mr. Hanson:** Correct.

*(CR 120 (41/2-13))*

**Ms. Craig:** Do you remember calling Pither Plumbing to ask for that work to be done?

**Mr. Hanson:** The only -- I don't recall calling. I recall meeting one of the employees or one of his guys there, and said we had to remove these troughs and put urinals in.

**Ms. Craig:** Okay. So you were at the site of The Reo when that work was being done?

**Mr. Hanson:** I was at the site. I was in and out, you know, because I didn't drive over here all the time.

**Ms. Craig:** Okay.

**Mr. Hanson:** But I remember, you know, talking about taking those troughs out and putting urinals in.

**Ms. Craig:** So you specifically asked for that work to be done?

**Mr. Hanson:** For that particular scope of work.

*(CR 121-122 (42/14 – 43/4))*

**Ms. Craig:** And just to clarify, did you call ahead of time to have that work done, or were the Pither Plumbing guys already working on something in The

18

Reo when you asked them, hey, could you also fix or remove the troughs?
**Mr. Hanson:** I don't recall -- I remember them being there when I came up that morning, and I don't know if it was because C.J. had already called and asked them to come up.
*(CR 123 (44/12-20))*

**Ms. Craig:** Let's take a look at Exhibit 19.
**Mr. Hanson:** Okay.
**Ms. Craig:** Do you see who called for that work to be done, at least according to the Pither Plumbing's records?
**Mr. Hanson:** Well, it's got my number on there.
*(CR 125 (46/19-24))*

**Ms. Craig:** Okay. I'm handing you Exhibit 21. Who called for that work to be done at The Reo?
**Mr. Hanson:** It would appear C.J.
**Ms. Craig:** The fact that C.J. called for the work to be done, do you know that that means, or do you understand that that means the work was actually done at The Reo and not at The Reo Palm Isle Club?
**Mr. Hanson:** I would assume that, yes.
*(CR 129 (50/1-8))*

**Ms. Craig:** I'm showing you Exhibit 23.
Do you see who called for the work to be done on Exhibit 23?
**Mr. Hanson:** It would appear C.J.
**Ms. Craig:** And if C.J. called for the

19

work to be done, then it's work that's being done at The Reo, not The Reo Palm Isle Club?

**Mr. Hanson:**  Correct.
*(CR 130-131 (51/19 – 52/1))*

**Ms. Craig:**  So again, you specifically have asked for work to get done at The Reo?

**Mr. Hanson:**  I specifically on that very initial deal, because I had knowledge of what needed to be done.
*(CR 229)*

**Ms. Craig:**  And you'd agree that based on at least the call sheets that were included in some of these invoices, you would actually call to have or if you were on site, you would ask for work to get done?

**Mr. Hanson:**  If I ever called over there, which I don't, I don't ever recall on that, because it was just, I have always, hey, C.J., get this, get that, you know, and then, you know, he would handle that.

**Ms. Craig:**  All right.  You --

**Mr. Hanson:**  So my conversation would be when they were on site that when I came in there that very first time, you know, the City had said you got to get rid of the horse troughs and put urinals in.  And that was the direct conversation that I had.
*(CR 229)*

Appellants provided no explanation for the change in Hanson's testimony. *See* CR 186-188.  Without an explanation for the change in testimony, the trial court could assume the sole purpose of Hanson's Affidavit was to avoid summary judgment and, accordingly, disregard the affidavit for presenting a "sham" fact issue.

### C.     The trial court implicitly sustained Appellee's objection to Hanson's Affidavit.

Appellants attached Hanson's Affidavit to their response to Appellee's Motion for Summary Judgment.  CR 169, 186.  In its reply, Appellee objected to Hanson's Affidavit at length under the sham-affidavit doctrine and requested the trial court to strike the affidavit.  CR 220-221, 230.  Appellants then filed an "Answer" to Appellee's reply, and argued that the trial court should not apply the sham-affidavit doctrine to disregard Hanson's Affidavit.  CR 241-251.  In its Order granting Appellee's Motion for Summary Judgment, the trial court stated that it "considered Plaintiff's Motion, Defendants' Response, <u>Plaintiff's Reply thereto</u> [which included the objection to Hanson's Affidavit], Defendants' Response to Plaintiff's Reply, and the arguments of counsel for the parties[.]"  CR 274 (emphasis added).

While the trial court did not expressly rule on Appellee's objection and motion to strike Hanson's Affidavit, the record clearly demonstrates an implied

ruling and that is sufficient. Tex. R. App. P. 33.1(a)(2)(A) (permitting the trial court to rule on objections "either expressly or implicitly"); *Frazier v. Yu*, 987 S.W.2d 607, 610 (Tex. App.—Fort Worth 1999, pet. denied) (discussed infra); *Slagle v. Prickett*, 345 S.W.3d 693, 702 (Tex. App.—El Paso 2011, no pet.) ("When a trial court grants a summary judgment on the motion to which the special exceptions pertain, the trial court has implicitly overruled the special exceptions."); *Marx v. Elec. Data Sys. Corp.*, 418 S.W.3d 626, 637-638 (Tex. App.—Amarillo 2009, no pet.) (applying Second District case law under Tex. R. App. P. 41.3) (discussed infra).

For example, in *Frazier v. Yu*, Yu moved for summary judgment against Frazier, the plaintiff, on her negligence claims stemming from a car wreck. *Frazier*, 987 S.W.2d at 608. In response to Yu's motion, Frazier only attached her own affidavit and the affidavit of a medical doctor. *Id.* Yu filed written objections to both affidavits and moved the trial court to strike them, but the trial court never made an explicit ruling. *Id.* at 608, 610. However, in its order granting summary judgment, the trial court stated that it reviewed "all *competent* summary judgment evidence." *Id.* at 610 (emphasis in original). The Fort Worth Court of Appeals found this language and the circumstances sufficient to "create[] an inference that the court implicitly sustained Yu's objections." *Id.* Without the affidavits, Frazier

22

had no summary judgment evidence and, accordingly, the Court of Appeals affirmed the summary judgment. *Id*. at 611.

Less conspicuous language was at issue in *Marx v. Elec. Data Sys. Corp.*, where the trial court's summary judgment merely stated that it "considered" the summary-judgment-movant's evidentiary objections and motion to strike. 418 S.W.3d at 637-638. The Amarillo Court of Appeals found that this language, coupled with the trial court's grant of summary judgment, "constituted an implicit granting of the motion to strike as well." *Id*. at 638 (citing *Frazier v. Yu*).

The Supreme Court of Texas has recognized implicit rulings in other procedural contexts. *See Walker v. Gutierrez*, 111 S.W.3d 56, 60, n.1 (Tex. 2003) (when trial court granted defendants' motion to dismiss plaintiff's health-care-liability claim for failure to properly file expert reports, the court implicitly denied the plaintiff's motion seeking a grace period to cure the defects in its expert reports). The common thread in *Frazier*, *Marx*, *Gutierrez*, and other "implicit ruling" cases is a sufficient indication in the record to allow the Court of Appeals to imply a ruling on the pertinent objection/motion.

Here, the trial court could not have granted summary judgment in the face of Hanson's Affidavit because it blatantly contradicted his prior deposition testimony on several material points in Appellee's Motion for Summary Judgment. In other words, had the trial court admitted Hanson's Affidavit as summary-judgment

evidence, the record would be so peppered with fact issues that no reasonable trial court would grant summary judgment. Accordingly, the trial court's order granting summary judgment, coupled with the statement that it "considered" Appellee's summary-judgment reply (which contained Appellee's objection and motion to strike Hanson's Affidavit), make it obvious that the trial court disregarded Hanson's Affidavit under the sham-affidavit doctrine. And as explained in Section 2.D., below, neither the Supreme Court of Texas nor this Court have expressly rejected or adopted the sham-affidavit doctrine, and there is abundant authority in Texas and elsewhere to support its application. Therefore, the trial court acted well within its discretion when it applied the sham-affidavit doctrine and disregarded Hanson's Affidavit.

This Court may not substitute its own judgment for that of the trial court. *Bellinger & DeWolf*, 342 S.W.3d at 147. And Appellants have not even attempted to show that the trial court's evidentiary ruling "was in error and that the error probably caused the rendition of an improper judgment." *McGowan*, 104 S.W.3d at 221 (citing Tex. R. App. P. 44.1(a)(1)). Accordingly, this Court should affirm.

D. **Even under a de novo review, this Court should adopt the sham-affidavit doctrine and affirm the summary judgment.**

If this Court finds that the trial court did not disregard Hanson's Affidavit, the proper standard of review is de novo and this Court must either adopt or reject

the sham-affidavit doctrine.  Because the doctrine is widely followed in Texas and across the country, and promotes the efficient evaluation and disposition of lawsuits, this Court should adopt the sham-affidavit doctrine, disregard Hanson's Affidavit, and affirm the trial court's summary judgment.

**I.      The sham-affidavit doctrine is widely followed in Texas and across the country.**

While neither the Supreme Court of Texas nor this Court have expressly rejected or adopted the sham-affidavit doctrine, it is followed by most of the Courts of Appeals in Texas;[1] nearly every federal circuit Court of Appeals, including the Fifth Circuit;[2] and by most states across the country.[3]  Appellants

---

[1] Of the Courts of Appeals that have directly considered the sham-affidavit doctrine, the following have adopted it:  *First State Bank of Mesquite v. Bellinger & DeWolf, LLP*, 342 S.W.3d 142, 148 (Tex. App.—El Paso 2011, no pet.); *Plunkett v. Conn. Gen. Life Ins. Co.*, 285 S.W.3d 106, 119 (Tex. App.—Dallas 2009, pet. denied); *Pando v. Southwest Convenience Stores, LLC*, 242 S.W.3d 76, 79-80 (Tex. App.—Eastland 2007, no pet.); *Trostle v. Trostle*, 77 S.W.3d 908, 915 (Tex. App.—Amarillo 2002, no pet.); *Cantu v. Peacher*, 53 S.W.3d 5, 10 (Tex. App.—San Antonio 2001, pet. denied); *Eslon Thermoplastics v. Dynamic Sys., Inc.*, 49 S.W.3d 891, 901 (Tex. App.—Austin 2001, no pet.); *Burkett v. Welborn*, 42 S.W.3d 282, 286 (Tex. App.—Texarkana 2001, no pet.); *Farroux v. Denny's Restaurants*, 962 S.W.2d 108, 111 (Tex. App.—Houston [1st Dist.] 1997, no pet.).  The Corpus Christi Court of Appeals has taken a case-by-case approach.  *Cf. Barth v. Royal Ins. Co.*, No. 13-02-688-CV, 2004 Tex. App. LEXIS 11319, *9, n.5 (Tex. App.—Corpus Christi Dec. 16, 2004, no pet.) (mem. op.) (applying sham-affidavit doctrine to disregard non-movant's affidavit), *with Del Mar College Dist. v. Vela*, 218 S.W.3d 856, 862, n.6 (Tex. App.—Corpus Christi 2007, no pet.) (declining to apply sham-affidavit doctrine under facts presented, but noting the doctrine's "limited viability or application where (1) the affidavit is executed after the deposition and (2) there is a clear contradiction on (3) a material point (4) without explanation, as in *Barth v. Royal Ins. Co.*[.]").  Only two Courts of Appeals have declined to adopt the sham-affidavit doctrine.  *See Davis v. City of Grapevine*, 188 S.W.3d 748, 755-756 (Tex. App.—Fort Worth 2006, pet. denied); *Thompson v. City of Corsicana Hous. Auth.*, 57 S.W.3d 547, 557-558 (Tex. App.—Waco 2001, no pet.).
[2] *See S.W.S. Erectors v. Infax, Inc.*, 72 F.3d 489, 495-496 (5th Cir. 1996); Randy Wilson, *The Sham Affidavit Doctrine in Texas*, 66 TEX. B.J. 962, 964, n.10 (2003) (noting that all federal circuits except the D.C. Circuit have adopted the sham-affidavit doctrine in one form or another).

refer to two cases from the Supreme Court of Texas—*Randall v. Davis Power & Light Co.*, 752 S.W.2d 4 (Tex. 1988) (per curiam) and *Gaines v. Hamman*, 358 S.W.2d 557 (Tex. 1962)—for the proposition that "a deposition does not have controlling effect over an affidavit in determining whether a motion for summary judgment should be granted." Appellants' Brief, p. 14. But neither case confronted a true "sham affidavit", and neither case adopted, rejected, or even mentioned the sham-affidavit doctrine.

In *Randall*, the plaintiff filed an affidavit in response to the defendant's motion for summary judgment, which the trial court denied. 752 S.W.2d at 4-5. The defendant then deposed the plaintiff, whose testimony conflicted with his prior affidavit. *Id*. at 5. Based on the deposition testimony, the defendant filed a second motion for summary judgment, which the trial court granted. *Id*. The Supreme Court of Texas reversed and remanded under the "well-established rule that a deposition does not have controlling effect over an affidavit in determining whether a motion for summary judgment should be granted." *Id*. (citing *Gaines v. Hamman*, 358 S.W.2d 557, 562 (Tex. 1962)). The Supreme Court explained that if "conflicting inferences" may be drawn from a party's deposition and affidavit filed in opposition to a motion for summary judgment, a fact issue exists. *Id*. *Randall* is not a sham-affidavit case because the plaintiff's affidavit pre-dated his deposition,

---

[3] Wilson, 66 Tex. B.J. at 965, n.16 (noting that the sham-affidavit doctrine "is generally well recognized in most states" and citing to twenty-nine opinions from across the country).

i.e., the affidavit was not submitted to avert prior deposition testimony and avoid the defendant's second motion for summary judgment.

*Gaines*, handed down in 1962, pre-dates any court's adoption of the sham-affidavit doctrine (in Texas or elsewhere), and should therefore be read with caution. *See* Randy Wilson, *The Sham Affidavit Doctrine in Texas*, 66 TEX. B.J. 962, 964 (2003) (surveying sham-affidavit cases across the country, the earliest of which is *Perma Research & Dev. Co. v. Singer Co.*, 410 F.2d 572 (2d Cir. 1969)). Moreover, *Gaines* did not involve contradictory testimony, only *conflicting inferences* that could be drawn from the plaintiff's deposition and his subsequently-filed affidavit in response to the defendant's motion for summary judgment. *Gaines*, 358 S.W.2d at 558-560, 562-564. The Supreme Court of Texas reversed the trial court's summary judgment for the defendant, and addressed the defendant's argument that the plaintiff's deposition controlled over his affidavit and foreclosed his cause of action as a matter of law: "there is no basis for giving controlling effect to a deposition as compared to an affidavit . . . . If *conflicting inferences may be drawn* from the deposition and from the affidavit of the same party, a fact issue is presented." *Id*. at 562 (emphasis added).

The El Paso Court of Appeals has distinguished *Randall* and *Gaines* as not being true "sham affidavit" cases: "A different situation is presented, however, when the summary judgment affidavit is executed *after* the deposition and there is

27

a *clear contradiction* on a material point without explanation for the change."

*First State Bank of Mesquite v. Bellinger & DeWolf, LLP*, 342 S.W.3d 142, 147-148 (Tex. App.—El Paso 2011, no pet.) (emphasis added). The Supreme Court of Texas has simply not addressed the sham-affidavit doctrine (but it may soon – *See Fred Loya Ins. Agency, Inc. v. Cohen*, 446 S.W.3d 913, 926-928 (Tex. App.—El Paso 2014, pet. filed)).

Moreover, although this Court has mentioned the sham-affidavit doctrine on two occasions, it has neither adopted nor rejected the doctrine. *See Benson v. Gaston*, No. 12-13-00287-CV, 2014 Tex. App. LEXIS 2753, *3-4, n.2 (Tex. App.—Tyler Mar. 12, 2014, pet. denied) (mem. op.); *Pierce v. Wash. Mut. Bank*, 226 S.W.3d 711, 717-718 (Tex. App.—Tyler 2007, pet. denied). Appellants claim that *Pierce v. Wash. Mut. Bank* is a sham-affidavit case in which this Court addressed an affidavit that conflicted with prior deposition testimony. *See* Appellants' Brief, pp. 13-14. But *Pierce* concerned an affidavit that arguably conflicted with the affiant's prior *interrogatory answers*. *Pierce*, 226 S.W.3d at 712-713, 717. *Pierce* is further distinguishable because (1) it was a homestead abandonment case, involving constitutional protections which this Court preferred to be "fully developed before a finder of fact" (*Id*. at 715, 717); and (2) it was unclear whether the affidavit at issue even conflicted with the affiant's prior interrogatory answers (*Id*. at 718 (Hoyle, J., dissenting) (explaining that "Pierce's

affidavit did not conflict with his interrogatory answers[.]")). Seven years after *Pierce*, this Court issued its opinion in *Benson v. Gaston* and implicitly confirmed that it has neither adopted nor rejected the sham-affidavit doctrine. *Gaston*, 2014 Tex. App. LEXIS at *3-4, n.2.

Appellants also cite to *Hassell v. Mo. Pac. R.R. Co.*, 880 S.W.2d 39, 41, n.1 (Tex. App.—Tyler 1994, writ denied) for the proposition that "factual conflicts existing between the non-movant's own deposition and affidavit must be resolved in the non-movant's favor." Appellants' Brief, p. 14. But *Hassell* is easily distinguished because it did not involve an issue regarding the sham-affidavit doctrine, and does not even mention the phrase "sham affidavit."

## II. The sham-affidavit doctrine promotes the efficient evaluation and disposition of lawsuits.

The purpose of summary judgment practice is to "eliminate patently unmeritorious claims and untenable defenses." *Tex. Dep't of Parks & Wildlife v. Miranda*, 133 S.W.3d 217, 228 (Tex. 2004). Summary judgment motions are filed every day based on the non-movant's deposition testimony, and litigants routinely evaluate cases for settlement purposes based on their opponent's deposition testimony. Without the sham-affidavit doctrine, a legitimate motion for summary judgment could be defeated by the non-movant's unexplained change in testimony, mustered in the face of the motion, and deposition-based summary judgment

practice would become a useless exercise. *See* Wilson, 66 TEX. B.J. at 968.

Moreover, litigants would have less incentive to settle a case based on deposition testimony which, instead of remaining inviolate, merely reflects one of two potential versions of the facts at issue. By requiring litigants to reasonably explain a change in testimony, the sham-affidavit doctrine crystallizes deposition testimony and promotes the efficient evaluation and disposition of lawsuits.

And the doctrine properly places the burden stemming from changed testimony upon the affiant. That is, the sham-affidavit doctrine requires the affiant to explain his or her change in testimony—a simple task; without the sham-affidavit doctrine, the burden from the change in testimony falls on the shoulders of the opposing party, who must needlessly eat the time and money expended on preparing a motion for summary judgment based on prior deposition testimony.

To dissuade this Court from adopting the sham-affidavit doctrine, Appellants will likely argue that the trial court cannot act as a fact-finder and weigh the credibility of witnesses for purposes of summary judgment, and that all inferences should be resolved in the non-movant's favor. But the sham-affidavit doctrine calls upon the trial court's discretionary power to admit or exclude summary-judgment evidence, which is distinct from its role as fact finder. Analyzing Rule 56 of the Federal Rules of Civil Procedure, which is nearly

identical to Rule 166a(c), the U.S. Court of Appeals for the Seventh Circuit explained the distinction as follows:

> Federal Rule of Civil Procedure 56 empowers a court to make a threshold determination of whether a factual issue is 'genuine.' This power does not emanate from the court's role as a fact-finder, a role which lays dormant during the summary judgment process. Rather, this power emanates from a court's ability to make an initial assessment of any evidence. A district court exercises its prerogative to assess evidence at trial by determining whether any evidence is admissible. The court is not acting as a fact-finder when it makes such determinations. A district court also exercises its prerogative to assess evidence at the summary judgment stage by determining whether an alleged factual conflict is 'genuine.'

*Unterreiner v. Volkswagen of Am.*, 8 F.3d 1206, 1212 (7th Cir. 1993), overruled on other grounds by *Hill v. Tangherlini*, 724 F.3d 965, 967, n.1 (7th Cir. 2013). Without the sham-affidavit doctrine to police unexplained contradictions in testimony offered to defeat summary judgment, Rule 166a(c)'s use of the term "genuine" is rendered meaningless. Tex. R. Civ. P. 166a(c) (the trial court shall grant summary judgment if the evidence shows that "there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law[.]") (emphasis added). Moreover, the sham-affidavit doctrine does not ask the trial court to weigh the credibility of witnesses, but to accept deposition testimony as true and disregard unexplained, contradictory statements in the deponent's subsequent affidavit.

Whatever Appellants' complaints are, this much is indisputable: the sham-affidavit doctrine asks for a pittance from the non-movant/affiant – he need only offer an explanation for his change in testimony to avoid application of the doctrine. Because Hanson offered no such explanation, this Court should disregard Hanson's Affidavit and affirm summary judgment for Appellee.

### E. Response to Appellants' Other Arguments.

#### I. No pleading to support suit on a sworn account or claim for quantum meruit.

Appellants complain on appeal that the summary judgment "has procedural issues" because there was no pleading to support a suit on a sworn account or a claim for quantum meruit. Appellants' Brief, pp. 4, 9. But Appellants failed to object to the lack of a pleading before the trial court, instead merely complaining that Appellee's suit on a sworn account was unverified.[4] CR 176. And the parties fully briefed Appellee's sworn account and quantum meruit claims for summary judgment. CR 50, 169. Therefore, Appellants waived any error, tried the claims by consent, and cannot complain on appeal. *See Via Net v. TIG Ins. Co.*, 211 S.W.3d 310, 313 (Tex. 2006) (per curiam); Tex. R. App. P. 33.1(a); Tex. R. Civ. P. 166a(c) ("Issues not expressly presented to the trial court by written motion,

---

[4] It should be noted that deficiencies in a plaintiff's sworn account, such as the lack of a verification, merely prevent it from constituting prima facie evidence of the debt. *See Enernational Corp. v. Exploitation Eng'rs, Inc.*, 705 S.W.2d 749, 750 (Tex. App.—Houston [1st Dist.] 1986, writ ref'd n.r.e.). The plaintiff would still be entitled to summary judgment when, as here, it offers affidavit testimony to prove up the account as a matter of law. CR 135-138.

<u>answer or other response</u> shall not be considered on appeal as grounds for reversal.") (emphasis added).

If the Court finds that Appellants did not waive error, the deficiencies in their own pleadings at the time of the summary-judgment hearing must be accounted for: (1) only Hanson, individually, entered a verified denial of Appellee's sworn account (SCR 52); (2) American Idol had only entered a general denial (CR 44); and (3) neither Appellant had entered a verified denial to support a defense of improper capacity or defect of parties under Tex. R. Civ. P. 93(2) or (4), or any affirmative defense under Tex. R. Civ. P. 94 (cf. CR 44 with SCR 52, and note that Appellants filed their Second Amended Original Answer and Special Exceptions on February 18, 2014, twelve days after the summary-judgment hearing. CR 270.).

## II. Hanson has no liability.

Appellants argue that Hanson has no liability because he did not contract with Appellee (Appellants' Brief, p. 8), did not have an account with Appellee (Appellants' Brief, p. 10), and did not operate the Reo or own the subject building/property (Appellants' Brief, pp. 11-12). Even assuming those arguments are true, Hanson is still individually liable because he was admittedly a general partner of American Idol at all pertinent times. CR 57; CR 104 (9/3 – 10/2); CR 112-131 (33/8 – 52/14). Under Tex. Bus. Org. Code § 152.306(a), "[a] judgment

may be entered against a partner who has been served with process in a suit against the partnership." Because Hanson was served with process and individually named as a party, the trial court properly granted summary judgment against him. SCR 4, 46-47. *See Kao Holdings, L.P. v. Young*, 261 S.W.3d 60, 63-64 (Tex. 2008); Tex. Civ. Prac. & Rem. Code 17.022 ("Citation served on one member of a partnership authorizes a judgment against the partnership and the partner actually served.").

### III. The trial court erred in granting summary judgment on damages.

Appellants argue that the trial court erred in granting summary judgment on damages because one of the invoices attached to Appellee's Motion for Summary Judgment mentioned, but failed to segregate, work done at the "Taco Place," and there was nothing further in the record to segregate the Taco Place charges. Appellants' Brief, pp. 12-13. Appellants have simply overlooked the summary judgment evidence and post-hearing briefing.

By its Motion for Summary Judgment, Appellee sought damages in the amount of $17,372.03.[5] CR 54-55, 137. During the summary-judgment hearing, Appellee acknowledged that part of that amount included work done at the Taco Place and suggested that the trial court could "cross out" that charge. RR 32/14-

---

[5] Appellants incorrectly state that Appellee sought only "$17,272.03." Appellants' Brief, p. 12.

24. After the hearing, the trial court sent counsel a letter requesting an explanation on how to cross out the Taco Place charges. CR 281. Appellee then filed a letter explaining that the Taco Place charges were, in fact, itemized on other invoices already in the record and amounted to $202.55. SCR 61-65; CR 80, 96, 98, 100. The trial court deducted $202.55 from $17,372.03 to arrive at the judgment amount of $17,169.48. CR 274. Therefore, the trial court properly excluded the Taco Place charges and this Court should affirm the trial court's summary judgment as to damages. Alternatively, if this Court finds that Appellee did not prove its damages as a matter of law, it should affirm as to liability and reverse and remand only as to the issue of damages.

3. **The trial court did not err in awarding Appellee its attorney's fees (no corresponding numbered issue in Appellants' Brief).**

As shown above, the trial court properly awarded summary judgment for Appellee on its claims for breach of contract, quantum meruit, and sworn account. Appellee proved $8,945.92 in attorney's fees and expenses through the Affidavit of T. John Ward, Jr., which was uncontroverted. CR 154-157. Accordingly, the trial court did not err in awarding Appellee its attorney's fees in the lesser amount of $7,847.00. Tex. Civ. Prac. & Rem. Code § 38.001, *et seq.*

## PRAYER

Appellee respectfully requests this Court to affirm the trial court's summary judgment and grant Appellee such other and further relief to which it is justly entitled. Should this Court find that Appellee did not prove its damages as a matter of law, Appellee alternatively requests this Court to affirm as to liability and reverse and remand only as to the issue of damages.

Respectfully submitted,

*/s/ Brett F. Miller*
T. JOHN WARD, Jr.
State Bar No. 00794818
jw@wsfirm.com
CLAIRE ABERNATHY HENRY
State Bar No. 24053063
claire@wsfirm.com
Brett F. Miller
State Bar No. 24065750
bmiller@wsfirm.com
**WARD & SMITH LAW FIRM**
P. O. Box 1231
Longview, Texas 75606-1231
(903)757-6400 (Telephone)
(903)757-2323 (Facsimile)

**ATTORNEYS FOR APPELLEE**

## CERTIFICATE OF COMPLIANCE

This document complies with the typeface requirements of TEX. R. APP. P. 9.4(e) because it has been prepared in a conventional typeface no smaller than 14-point font for text and 12-point for footnotes. This document also complies with the word-count limitations of TEX. R. APP. P. 9.4(i), because it contains 8,236 words, according to the computer program used to prepare this document, excluding any parts exempted by TEX. R. APP. P. 9.4(i)(1).

*/s/ Brett F. Miller*
Brett F. Miller

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing document was filed electronically. This document was served on all counsel who are deemed to have consented to electronic service. Local Rule 3(c). Pursuant to TEX. R. APP. P. 9.5(b) and Local Rule 3(c)(2), all other counsel of record not deemed to have consented to electronic service were served with a true and correct copy of the foregoing by email, facsimile, or certified mail on this the ___17th___ day of February, 2015.

*/s/ Brett F. Miller*
Brett F. Miller

**CAUSE NO. 12-14-00134-CV**

IN THE COURT OF APPEALS OF TEXAS
TWELFTH JUDICIAL DISTRICT

AMERICAN IDOL, GENERAL, LP d/b/a The REO, and
RANDY HANSON a/k/a RANDALL HANSON,
Appellants

v.

PITHER PLUMBING CO., INC.,
Appellee
_____

On Appeal from Cause No. 2012-1842-A
In the 188th Judicial District Court of Gregg County, Texas
The Honorable David Brabham, Presiding
_____

APPENDIX TO BRIEF OF APPELLEE PITHER PLUMBING CO., INC.
_____


1.    Affidavit of Randall Hanson (CR 186).

## NO. 2012-1842-A

| | | |
|---|---|---|
| PITHER PLUMBING CO., INC. | § | IN THE DISTRICT COURT |
| | § | |
| v. | § | OF GREGG COUNTY, TEXAS |
| | § | |
| AMERICAN IDOL GENERAL, LP | § | |
| D/B/A THE REO, and RANDY | § | |
| HANSON A/K/A RANDALL HANSON | § | 188TH JUDICIAL DISTRICT |

## AFFIDAVIT OF RANDALL HANSON

| | | |
|---|---|---|
| STATE OF TEXAS | § | |
| | § | KNOW ALL MEN BY THESE PRESENTS: |
| COUNTY OF SMITH | § | |

Before me, the undersigned authority, on this day personally appeared RANDALL BRADFORD HANSON, who, being by me first duly sworn, according to law, upon her oath deposed and stated as follows:

"My name is RANDALL BRADFORD HANSON, I am over the age of 18 years, of sound mind, have never been convicted of a felony or a crime of moral turpitude, and have personal knowledge of the following facts and the following facts are true and correct.

"I am Defendant in the current suit.

"All of the facts contained in the attached response are true and correct to the best of my knowledge.

"Max Singleton is the owner the building in question, "The Reo Palm Isle Club", located at 4716 W. Loop 281, Longview, Texas.

"Max Singleton has owned the building during the time that Plaintiff allegedly provided plumbing services for "The Reo Palm Isle Club", located at 4716 W. Loop 281, Longview, Texas.

"Tacos Goyo was located at 4716 W. Loop 281, Longview, Texas and was a tenant of Max Singleton during the relevant time period from January 18, 2010 through January 12, 2012. Tacos Goyo was a separate business with no connection whatsoever to Randy Hanson, American Idol, or the club commonly known as "The Reo."

"The club commonly known as, "The Reo" was a tenant of Max Singleton during the relevant time period.

"American Idol General, LP has never owned the property called "The Reo Palm Isle Club" located at 4716 W. Loop 281, Longview, Texas.

"American Idol General, LP did not operate the club known as "The Reo" during the relevant time period from January 18, 2010 through January 12, 2012.

"American Idol General, LP was not affiliated with the property called "The Reo Palm Isle Club" located at 4716 W. Loop 281, Longview, Texas.

"American Idol General, LP had no employees during the relevant time period from January 18, 2010 through January 12, 2012.

"American Idol General, LP existed solely to hold the liquor license for the club commonly known as "The Reo."

"American Idol General, LP had no assets.

"American Idol General, LP did not have a checking account.

"American Idol General, LP never received services from Pither Plumbing Co., Inc. It could not have requested or received services, as it only held a liquor license.

"C.J. BROERS was not an employee of American Idol General, LP.

"C.J. BROERS had no authority to enter into construction contracts on behalf of American Idol General, LP.

"American Idol General, LP, nor any agent of American Idol General, LP, including RANDALL HANSON or C.J. BROERS, ever entered into an agreement with Pither Plumbing Co., Inc. regarding plumbing services that were purported to be performed at "Reo Palm Isle Club", located at 4716 W. Loop 281, Longview, Texas.

"American Idol General, LP never paid for plumbing services, or any other services that were purported to be performed at "Reo Palm Isle Club", located at 4716 W. Loop 281, Longview, Texas.

"American Idol General, LP never received invoices from Plaintiff regarding the plumbing services that were purported to be performed at "Reo Palm Isle Club", located at 4716 W. Loop 281, Longview, Texas.

"American Idol General, LP never received any demand letters from Plaintiff regarding the plumbing services that were purported to be performed at "Reo Palm Isle Club", located at 4716 W. Loop 281, Longview, Texas.

"BRKA, INC is a contracting company, and C.J. BROERS was an agent of BRKA, INC.

"Further affiant sayeth not."

_____
RANDALL BRADFORD HANSON


SUBSCRIBED AND SWORN TO before me the undersigned Notary Public on this 28th day of January, 2014.



CATHERINE POWELL CLAYTON
Notary Public, State of Texas
My Commission Expires
June 17, 2017

NOTARY PUBLIC


**188**